# THE STATE v. MISSOURI TIE & TIMBER COMPANY, Appellant.

### In Banc, May 11, 1904.

1. **PAYMENT OF LABORERS: Right to Contract: Police Regulation.** Section 8142, Revised Statutes 1899, making it a misdemeanor for "any person, firm or corporation to issue, pay out or circulate, for the payment of wages of labor, any order, note, check, memorandum, token, evidence of indebtedness, or other obligation, unless the same is negotiable and redeemable at its face value, in lawful money of the United States, by the person, firm or corporation issuing the same," can not be upheld as a police regulation, when invoked against a concern which in no way is pursuing a public business or devoting its property to a public use.

2. ———: ———: **Unconstitutional.** Said statute is unconstitutional on the ground that it interferes with or abridges the right of persons competent to contract with each other with respect to the manner in which the one is to be paid for his labor by the other.

3. ———: ———: **Constitutional Provision.** The right to labor or employ labor, and make contracts with respect thereto, upon such terms as may be agreed upon, is both a liberty and a property right, and is included in the guaranty of the Constitution which provides "that no person shall be deprived of life, liberty or property without due process of law." Such right can not be arbitrarily interfered with, although it is to be enjoyed subject to reasonable limitations growing out of duties which the individual owes society.

Transferred from St. Louis Court of Appeals.

REVERSED.

*J. C. Sheppard* and *Dinning & Hamel* for appellant.

Revised Statutes 1899, art. 3, chap. 121, is in conflict with the Constitution of this State, in this: It violates that part of section 4, article 2, which says: ''That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design.'' Article 3, also violates section 30 of article 2 of the Constitution of Missouri, which says: ''That no person shall be deprived of life, liberty or property, without due process of law.'' Article 3 also violates that part of the fourteenth amendment to the Constitution of the United States which provides: ''Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'' State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; 2 Story on the Constitution (5 Ed.), secs. 1590 and 1943; Cooley on Constitutional Limitations (6 Ed.), 430 and 434; Bank v. Okeley, 4 Wheat. 235; Wally's Heirs v. Kennedy, 2 Yerg. 554; Commonwealth v. Perry, 28 N. E. 1126; Commonwealth v. Perry, 155 Mass. 117; Godcharles v. Wigeman, 113 Pa. St. 431; State v. Goodwill, 33 W. Va. 179; State v. Coal & Coke Co., 33 W. Va. 188; Millett v. People, 117 Ill. 294; Frover v. People, 141 Ill. 171; Ritchie v. People, 155 Ill. 98; In re Jacobs, 98 N. Y. 98; People v. Gillson, 109 N. Y. 389; Tilt v. People, 27 Chicago Leg. News 270.

*Edward C. Crow,* Attorney-General, and *Sam. B. Jeffries,* Assistant Attorney-General, for the State.

(1) The statute does not invade the constitutional right to contract. Appellant insists, with considerable force, but with scarcely any reason, that the act is un-

constitutional because it deprives a person of the right to dispose of his labor in whatsoever way he·chooses; that by its term he is not permitted to sell "the sweat of his brow" as he himself may see proper, and that appellant is deprived of the right to contract for labor freely and as it may desire. It may be said that the object of the law is to place and keep all men in parallel positions, giving them equal rights, privileges and power before the law. When they are placed and kept in equal positions, it may be held with perfect justice that full protection is granted them by the provisions of our State and federal constitutions insofar as the "right to enjoy the fruits of their own labor," and the right to be secure in the possession of their property is concerned. It would not do to allow the strong to take advantage of the weak, or to oppress them under the pretense of a license granted by a fancied construction of our organic law. Nor will one be permitted to say he can not be restrained by a general statute from entering into a contract with a laboring man, which would be oppressive to the laborer, for the sole reason that it would impair the laborer's right to contract, or would be depriving him of his property without due process of law. To thus hold would turn that which was intended as a blessing into a constant and ever-continuing curse. While these great constitutional safeguards must be preserved, yet an impartial and practical interpretation should be given them. One man, because of his financial power and standing, should not be permitted to prey upon the innocent and unfortunate and justify his conduct under the pretense that the Constitution, either federal or State, has granted the right to do so. Legislation of this kind has been upheld in a number of courts in this country, including the Supreme Court of the United States. People v. Lochner, 75 N. Y. S. 396; People v. Construction Co., 77 N. Y. S. 16; Winham v. State, 91 N. W. 421; Iron Co. v. Harbison, 103 Tenn. 421; Dugger v. Ins. Co., 95 Tenn. 245; Holden v. Hardy, 169 U. S. 366; Ins. Co. v. Daggs,

172 U. S. 557; Railroad v. Matthews, 174 U. S. 96; Iron
Co. v. Harbison, 183 U. S. 13.   (2)   The natural right
of persons to contract is subject to wholesome legisla-
tion.   In the light of recent decisions it must be taken
as an accepted principle that the natural right of all
persons to contract, as guaranteed by our Constitutions,
is subject to wise and wholesome legislative restrictions
and regulations growing out of the proper exercise of
the police powers of the State.   These regulations may
place restrictions on the right to contract, yet they are
held valid.   Ins. Co. v. Daggs, 172 U. S. 557; People v.
Lochner, 76 N. Y. S. 396; Lawton v. Steel, 152 U. S.
133.   While the strict letter of our Constitution indicates
that the natural person shall not be deprived of the right
to contract as he may see proper, yet in civilized society
there is no such thing as an unrestrained power on the
part of the individual to contract.   The right of the in-
dividual is subject to wise and beneficial police regula-
tions, and when a certain act harmful to the people is
prohibited by a general statute, it will be upheld.   Grimes
v. Eddy, 126 Mo. 186; State ex rel. v. Ins. Co., 152 Mo.
1; Karnes v. Ins. Co., 144 Mo. 413; Morrison v. Morey,
146 Mo. 543.   (3)   Let the sections in question be ap-
plied to a corporation, as in the case at bar, and there
can be no question as to their constitutionality.   A cor-
poration has no natural right; it is an artificial person
and can enter into only such contracts and transact only
such business as is expressly granted by its charter or
such as is necessarily implied therefrom.   Huntington
v. Bank, 96 U. S. 388; Thomas v. Railroad, 101 U. S.
71; Railroad v. Railroad, 118 U. S. 290; Railroad v.
Railroad, 130 U. S. 1; Head v. Ins. Co., 2 Cranch 127;
Matthews v. Skinker, 62 Mo. 329; Carroll v. Campbell,
108 Mo. 550.

BURGESS, J.—The defendant is a corporation
duly incorporated under the laws of this State, and was,
at the time of the commission of the alleged offenses of

which it was convicted, engaged in the tie and timber business in Ripley county. It had in connection with its timber business a general supply store for the purpose of furnishing supplies to its employees.

The information upon which this prosecution is based contained four counts, which, leaving off the formal parts, are as follows:

"Now comes Thomas F. Lane, prosecuting attorney within and for the county of Ripley, in the State of Missouri, and informs the court, under his oath of office and upon his own information and belief, that the Missouri Tie and Timber Company is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and was such during all the times mentioned in this information; that said defendant corporation, the Missouri Tie and Timber Company, and T. J. Henderson, its servant, agent and officer, on the . . . day of December, 1901, at the said county of Ripley, in the State of Missouri, did then and there unlawfully and wrongfully issue, pay out, and circulate, for the payment of wages for certain labor done and performed by one H. A. Sweeney for the Missouri Tie and Timber Company, a certain order, check, memorandum, token, evidence of indebtedness and obligation of the said Missouri Tie and Timber Company, which said order, check, coupon, memorandum, token, evidence of indebtedness and obligation so paid out and circulated for the payment of the wages of labor of the said H. A. Sweeney is described as follows:

" 'Order for merchandise, $5.

" 'To Missouri Tie and Timber Co.

" 'Acct. Order of H. A. Sweeney.

" 'O. K.    T. W. Beauchamp.    No. 1761C.

" 'Merchandise order.

" 'Amounting to five dollars, at the store of Missouri Tie & Timber Co., upon conditions named on back of this book and made a part thereof.

" 'Missouri Tie & Timber Co., please furnish my-

self or . . . goods at your store to the amount of $5 and charge same to my account as per coupons contained in this book. These coupons to be detached only by the authorized employees of the Missouri Tie & Timber Co., and if otherwise detached, to be worthless.

" 'H. A. SWEENEY.'

"Said order book, coupon, token, check, memorandum, evidence of indebtedness and obligation, containing between the covers thereof, one hundred five-cent mercantile coupons, each of which is described as follows:

" 'Mercantile Coupon 5 Cents.

" 'Mo. Tie & Timber Co.

" 'No. 1761C.'

"That said check, coupon, token, memorandum, evidence of indebtedness and obligation, so paid out for the wages of labor as aforesaid, by the said Missouri Tie & Timber Company, and J. T. Henderson, as aforesaid, is not redeemable in lawful money of the United States, at its face value. Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"Now comes Thomas F. Lane, prosecuting attorney, within and for the county of Ripley, in the State of Missouri, and informs the court under his oath of office and upon his own information and belief, that the Missouri Tie and Timber Company is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and was such during all the times mentioned in this information; that said defendant corporation, the Missouri Tie and Timber Company, and J. T. Henderson, its servant, agent and officer, on the . . . day of December, 1901, at the said county of Ripley, in the State of Missouri, did then and there unlawfully and wrongfully issue, pay out, and circulate, for the payment of wages for certain labor done and performed by one E. H. Day for the said Missouri Tie and Timber Company, a certain order, check, memo-

randum, token, evidence of indebtedness and obligation of the said Missouri Tie and Timber Company, which said order, check, coupon, memorandum, token, evidence of indebtedness and obligation so paid out and circulated for the payment of the wages of labor of the said E. H. Day, is described as follows, to-wit:

" 'Order for Merchandise, $5.

" 'To Missouri Tie & Timber Co.

" 'Acct. Order of E. H. Day.

" 'O. K.    T. W. Beauchamp, No. 1810C.

" 'Merchandise order.

" 'Amounting to five dollars, at the store of Missouri Tie & Timber Co., upon conditions named on back of this book and made a part hereof.

" 'Missouri Tie & Timber Co., please furnish myself or . . . goods at your store to the amount of $5 and charge same to my account as per coupons contained in this book.   These coupons to be detached only by the authorized employees of the Missouri Tie & Timber Co., and if otherwise detached, to be worthless.

" 'E. H. DAY.'

"Said order book, coupon, token, check, memorandum, evidence of indebtedness and obligation, containing between the covers thereof one hundred five-cent mercantile coupons, each of which is described as follows:

" 'Mercantile Coupon, 5 cents.

" 'Mo. Tie & Timber Co.

" 'No. 1801C.'

"That said check, coupon, token, memorandum, evidence of indebtedness and obligation, so paid out and circulated for the wages of labor as aforesaid, by the said Missouri Tie & Timber Company, and J. T. Henderson, as aforesaid, is not redeemable in lawful money of the United States, at its face value.   Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"Now comes Thomas F. Lane, prosecuting attor-

ney, within and for the county of Ripley, in the State
of Missouri, under his oath of office and upon his own
information and belief, and informs the court that the
Missouri Tie and Timber Company is a corporation
organized and existing under and by virtue of the laws
of the State of Missouri, and was such corporation dur-
ing all the times mentioned in this information. That
said defendants, the Missouri Tie and Timber Company,
and J. T. Henderson one of its servants, agents and
officers, on or about the twenty-seventh day of Decem-
ber, 1901, at the county of Ripley and State of Mis-
souri, did then and there unlawfully and wrongfully
refuse and fail to redeem in lawful money of the United
States a certain memorandum, token, order, check, obli-
gation and evidence of indebtedness, to-wit, an order for
merchandise on and to the said Missouri Tie and Tim-
ber Company in the form of a merchandise coupon check
book to the amount of five dollars, which said coupon
check book contained one hundred coupons, each for
the sum of five cents; which merchandise coupon check
book had theretofore been issued, paid out and put into
circulation by the said Missouri Tie and Timber Com-
pany, indorsed by one T. W. Beauchamp, a servant and
agent of said defendant corporation, and delivered to
one H. A. Sweeney for the payment to him of wages for
labor done and performed by the said H. A. Sweeney,
for and at the request of the said Missouri Tie and
Timber Company. That said merchandise coupon check
book was on the   . . .   day of December, 1901, by
H. A. Sweeney, the owner thereof, for a valuable consid-
eration, sold and delivered to W. A. Leach & Company,
a firm composed of W. A. Leach and Jacob Hardcastle;
that afterwards, to-wit, on or about the twenty-seventh
day of December, 1901, W. A. Leach, on behalf of the
firm of W. A. Leach & Company, duly presented said
merchandise coupon check book, heretofore described, to
J. T. Henderson, servant, agent and officer of the said
Missouri Tie and Timber Company, at the usual place

of business and general office of said Missouri Tie and Timber Company, in Ripley county, Missouri, during the business hours of said day, and demanded payment therefor in lawful money of the United States, which was then and there refused by the said J. T. Henderson, servant, agent and general manager of the defendant Missouri Tie and Timber Company, as aforesaid; which said refusal and failure to redeem said merchandise coupon book, in lawful money of the United States, as aforesaid, was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"Now comes Thomas F. Lane, prosecuting attorney, within and for the county of Ripley, in the State of Missouri, under his oath of office and upon his own information and belief, and informs the court that the Missouri Tie and Timber Company is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and was such corporation during all the times mentioned in this information. That said defendants, the Missouri Tie and Timber Company, and J. T. Henderson one of its servants, agents and officers, on the fourteenth day of January, 1902, at the county of Ripley and State of Missouri, did then and there unlawfully and wrongfully refuse and fail to redeem in lawful money of the United States, a certain memorandum, token, order, check, obligation and evidence of indebtedness, to-wit, an order for merchandise on and to the said Missouri Tie and Timber Company, in the form of a merchandise coupon check book numbered 1801C to the amount of five dollars, which said coupon check book contained one hundred coupons, each for the sum of five cents; which merchandise coupon check books had theretofore been issued, paid out and put in circulation by the said Missouri Tie and Timber Company, indorsed by one T. W. Beauchamp, a servant and agent of said defendant corporation, and delivered

to one E. H. Day for the payment to him of wages for labor done and performed by the said E. H. Day, for and at the request of the said Missouri Tie and Timber Company. That said merchandise coupon check book was on the . . . day of December, 1901, by E. H. Day the owner thereof, for a valuable consideration, sold and delivered to W. A. Leach & Company, a firm composed of W. A. Leach and Jacob Hardcastle; that afterwards, to-wit, on the fourteenth day of January, 1902, W. A. Leach on behalf of the firm of W. A. Leach & Company, duly presented said merchandise coupon check book, heretofore described, to J. T. Henderson, servant, agent, and officer of the said Missouri Tie and Timber Company, at the usual place of business and general office of said Missouri Tie and Timber Company, in Ripley county, Missouri, during the business hours of said day, and demanded payment therefor in lawful money of the United States, which was then and there refused by the said J. T. Henderson, servant, agent, and general manager of the defendant, Missouri Tie and Timber Company, as aforesaid; which said refusal and failure to redeem said merchandise coupon book, in lawful money of the United States as aforesaid, was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

The case was dismissed as to T. J. Henderson, and by consent of the other parties, a jury was waived, the cause tried by the court, the defendant found guilty upon each count in the information, and its punishment fixed at a fine of fifty dollars upon each count. Defendant appealed the case to the St. Louis Court of Appeals, from which it was transferred by that court to the Supreme Court.

The case was tried upon the following agreed statement of facts:

State v. Tie & Timber Co.

### AGREED STATEMENT OF FACTS.

"It is hereby stipulated and agreed by and between the parties hereto, that the charges in the information against the defendant filed herein, and each and every count thereof, be submitted to the court, waiving a jury, for its finding and judgment upon the following agreed statement of facts: That defendant is a corporation doing business in Ripley county, Missouri, and on the . . . day of December, 1901, had in its employ, H. A. Sweeney, cutting and hauling ties and putting same on defendant's railroad; that in payment for his wages for such labor defendant issued to said H. A. Sweeney a certain order, check, memorandum, token, obligation or evidence of indebtedness, which is in words and figures as follows, to-wit:

#### ORDER FOR MERCHANDISE, $5.

To Missouri Tie & Timber Co.
     Acct. order of H. A. Sweeney.
     O. K. T. W. Beauchamp,             No. 1761C.
     Merchandise order
     Amounting to five dollars at the store of Missouri Tie & Timber Co. upon conditions named in the back of this book and made a part hereof.

"That the back of said book is in words and figures as follows, to-wit:

Missouri Tie & Timber Co. please furnish myself or . . . . . . . . . . goods at your store to the amount of $5.00 and charge same to my account as per coupons contained in this book. These coupons to be detached only by the authorized employees of the Missouri Tie & Timber Co., and if otherwise detached to be worthless.

                              H. A. Sweeney.

"That said order book, token, check, memorandum, obligation or evidence of indebtedness contained between its covers one hundred five-cent mercantile coupons, each of which is described as follows, to-wit:

     Mercantile Coupon 5 Cents
          Mo. Tie & Timber Co.
               No. 1771C.

"It is further stipulated and agreed that said check, order, token, memorandum, obligation or evidence of indebtedness was not redeemable in lawful money of the United States at its face value and the same was in truth and in fact issued by defendant to said H. A. Sweeney in payment to him as wages for his labor. It is further agreed as to third and fourth counts that defendant has an irregular pay-day once in every month and that if an employee on such pay-day holds one of the above described checks, tokens, memoranda, obligations or evidences of indebtedness or a balance thereof, the same will be and is paid to such employee, in cash on his demand; but that said defendant will not pay such check, memorandum, obligation or evidence of indebtedness in cash when held or presented by any other person than the one to whom it was issued in the first instance, but will exchange goods therefor. It is further agreed that on the twenty-seventh day of December, 1901, W. A. Leach was the legal owner and holder of the above described check, token memorandum, obligation or evidence of indebtedness for value, and that on said day, during the business hours of the day, the said Leach presented the same at the place of business of defendant, and demanded payment thereof in lawful money of the United States, and that defendant then and there refused to pay the same in cash.

"It is further agreed that defendant keeps in stock hundreds of dollars in amounts of checks, tokens, memoranda, obligations or evidences of indebtedness of like character and purport as the one above specifically described, and that the same are issued only to employees of defendant, in payment of wages for labor, and then only when such employees have amounts due them for labor equal or greater than the amount of such check, token, memorandum, obligation or evidence of indebtedness issued to them at such times.

"That in order to save a large amount of bookkeeping said company has printed and issues the coupon

books in evidence, and that no laborer is compelled, induced, coerced or required to take any coupon book or books in payment of his wages or to trade at the store of the company unless he so desires.''

The court, at the instance of the State, declared the law to be as follows:

''1. The court declares the law to be upon the first count in the information in this case as follows: That if you shall believe and find from the evidence, that defendant, Missouri Tie and Timber Company was a corporation, doing business in Ripley county, Missouri, and that defendant, T. J. Henderson, was its servant, agent and general manager, and that said corporation, by and through its servant, agent and general manager, J. T. Henderson, did on said . . . day of December, 1901, at the said county of Ripley, and State of Missouri, unlawfully and wrongfully issue and pay out, and circulate for the payment of wages for labor, done and performed by H. A. Sweeney for defendant, the said Missouri Tie and Timber Company, a certain order, check, memorandum, evidence of indebtedness or obligation of said defendant, the said Missouri Tie and Timber Company, for the sum of five dollars, and that said check, order, token, memorandum, evidence of indebtedness, or obligation, so paid out for wages of labor to said H. A. Sweeney, by defendant, Missouri Tie and Timber Company, as aforesaid, was not at the time of issuing the same, redeemable in lawful money of the United States, at its face value, then you will find defendant, Missouri Tie and Timber Company, guilty as charged in the first count of the information herein, and assess the punishment of defendant, Missouri Tie and Timber Company, at a fine of not less than fifty dollars nor more than five hundred dollars.

''2. The court declares the law to be in this case, that it makes no difference in law whether H. A. Sweeney agreed to accept the order, check, token, memorandum, evidence of indebtedness or obligation in pay-

ment for wages for labor or not, nor does it make any difference that the said order, token, check, memorandum, obligation or evidence of indebtedness, purports on its face to be an order issued by the said H. A. Sweeney on defendant, said Missouri Tie and Timber Company, for merchandise, and accepted by said defendant corporation, if in fact the said token, check, order, memorandum, obligation, or evidence of indebtedness was issued in payment of wages for labor performed by said H. A. Sweeney for defendant, and not redeemable at its face value in lawful money of the United States. And you should not take these facts into consideration in arriving at your verdict in this case.

"3. The court declares the law to be upon the second count in the information in this case as follows: That if you shall believe and find from the evidence, that defendant, Missouri Tie and Timber Co., was a corporation doing business in Ripley county, Missouri, and that defendant, J. T. Henderson, was its servant, agent and general manager, and that said corporation, by and through its servant, agent and general manager, J. T. Henderson, did on said . . . day of December, 1901, at the said county of Ripley, and State of Missouri, unlawfully and wrongfully issue and pay out, and circulate for the payment of wages for labor done and performed by E. H. Day for defendant, the said Missouri Tie and Timber Company, a certain order, check, memorandum, evidence of indebtedness or obligation of said defendant, the said Missouri Tie and Timber Company, for the sum of five dollars, and that said check, order, token, memorandum, evidence of indebtedness or obligation, so paid out for wages of labor to said E. H. Day, by defendants, Missouri Tie and Timber Company, and J. T. Henderson, its servant, agent and general manager, as aforesaid, was not at the time of issuing the same redeemable in lawful money of the United States, at its face value, then you will find de-

fendants, Missouri Tie and Timber Company, and J. T. Henderson, its servant, agent and general manager, guilty as charged in the second count of the information herein, and assess the punishment of defendant, Missouri Tie and Timber Company, at a fine of not less than fifty dollars, nor more than five hundred dollars.

"4.   The court declares the law to be in this case, that it makes no difference in law, whether E. H. Day agreed to accept the order, check, token, memorandum, evidence of indebtedness or obligation in payment for wages for labor or not, nor does it make any difference that the said order, token, check, memorandum, obligation, or evidence of indebtedness, purports on its face to be an order issued by the said E. H. Day on defendant, said Missouri Tie and Timber Company, for merchandise and accepted by said defendant corporation, if in fact the said token, check, order, memorandum, obligation or evidence of indebtedness was issued in payment of wages for labor performed by said E. H. Day, for defendant, and not redeemable at its face value in lawful money of the United States. And you should not take these facts into consideration in arriving at your verdict in this case.

"5.   The court declares the law to be upon count No. 3 of the information in this case, as follows:   That if you shall believe and find from the evidence, that defendant, Missouri Tie and Timber Company, a corporation, was doing business in Ripley county, Missouri, and that said corporation on or about the twenty-seventh day of December, 1901, at the county of Ripley and State of Missouri, did then and there unlawfully and wrongfully refuse to redeem in lawful money of the United States a certain memorandum, check, token, order, obligation or evidence of indebtedness, for the sum of five dollars, which said memorandum, check, token, order, obligation or evidence of indebtedness, had theretofore been issued, paid out and put into circulation by defendants and delivered to H. A. Sweeney in pay-

ment to him for wages of labor, done and performed by him for and at the request of defendant, Missouri Tie and Timber Company, and if you shall further find and believe from the evidence, that on or about said twenty-seventh day of December, 1901, said token, order, check, memorandum, obligation or evidence of indebtedness, was presented to defendant, at their usual place of business and general office, in Ripley county, Missouri, during the business hours of the day, and payment therefor demanded in lawful money of the United States, for its face value, and that such payment for its face value, in lawful money of the United States of said token, order, memorandum, check, obligation or evidence of indebtedness, was then and there refused by defendants, you will then find defendants guilty as charged in the third count in the information, and you will assess the punishment of the Missouri Tie and Timber Company at a fine of not less than fifty, nor more than five hundred dollars.

"6. The court declares the law to be upon count numbered 4 of the information in this case as follows: That if you shall believe and find from the evidence, that defendant, Missouri Tie and Timber Company, a corporation, doing business in Ripley county, Missouri, on or about the twenty-seventh day of December, 1901, at the county of Ripley and State of Missouri, did then and there unlawfully and wrongfully refuse to redeem in lawful money of the United States a certain memorandum, check, token, order, obligation or evidence of indebtedness, for the sum of five dollars, which said memorandum, check, token, order, obligation or evidence of indebtedness, had theretofore been issued, paid out and put in circulation by defendants and delivered to E. H. Day in payment to him for wages of labor done and performed by him for and at the request of defendants, Missouri Tie and Timber Company; and if you shall further find and believe from the evidence, that on or about said twenty-seventh day of December, 1901,

said token, order, check, memorandum, obligation or evidence of indebtedness, was presented to defendants, at their usual place of business and general office, in Ripley county, Missouri, during the business hours of the day, and payment therefor demanded in lawful money of the United States, for its face value, and that such payment for its face value, in lawful money of the United States, of said token, order, memorandum, check, obligation or evidence of indebtedness, was then and there refused by defendants, you will then find defendants guilty as charged in the fourth count in the information. And you will assess the punishment of the Missouri Tie and Timber Company, at a fine of not less than fifty nor more than five hundred dollars.''

To the giving of said declarations of law, and each of them, counsel for defendant excepted at the time.

The defendant requested the court to declare the law as follows:

''1. The court sitting as a jury declares the law to be that under the information and the evidence in this cause the defendant can not be convicted and the finding must be not guilty.

''2. The court declares the law to be that if it finds and believes from the evidence that the defendant company issued the coupon book in evidence for the convenience of the company, and to avoid voluminous bookkeeping, and not for the purpose of compelling its employees to trade at its store or to take goods for their labor, then the defendant is not guilty, and the court should so find.

''3. The court further declares the law to be that the statute, sections 8142, 8143 and 8144, Revised Statutes of Missouri of 1899, is unconstitutional and void as being in violation of the constitutional provision 'that no person shall be deprived of life, liberty or property without due process of law.' ''

Which declarations of law the court refused to give, and defendant duly excepted.

It is asserted by defendant in its motion for a new trial that a new trial should be granted: First, because the finding is against the evidence; second, because there is no evidence to support the finding; third, because the court erred in giving instructions numbered 1, 2, 3, 4, 5 and 6 on behalf of the State; fourth, because the court erred in refusing declarations of law numbered 1, 2 and 3 asked on behalf of the defendant; fifth, because the statute, Revised Statutes of 1899, chapter 121, art. 3, sections 8142 and 8143, are unconstitutional, in violation of the Constitutions of the United States and the State of Missouri, and void, and will not support the finding.

The information is based upon sections 8142, 8143, 8144 and 8145, of the Revised Statutes 1899. The first of these sections reads as follows:

Sec. 8142. "It shall not be lawful for any person, firm or corporation in this State to issue, pay out or circulate, for payment of the wages of labor, any order, note, check, memorandum, token, evidence of indebtedness, or other obligation, unless the same is negotiable and redeemable at its face value, in lawful money of the United States, by the person, firm or corporation issuing the same."

Sec. 8143. "All persons, firms or corporations issuing or circulating any such order, note, check, memorandum, token, evidence of indebtedness, or other obligation, shall be at all times during the business hours of the day prepared to redeem, and shall redeem, all such orders, notes, checks, memorandum, tokens, evidence of indebtedness, or other obligation, when presented at their place of business or office, at their face value, in good and lawful money of the United States, or in goods, at the option of the holder."

Sec. 8144. "Any person, firm or corporation, or the officer or officers of any corporation, who shall violate this article shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in

a sum not less than fifty nor more than five hundred dollars, or by imprisonment in the county jail, or by both such fine and imprisonment."

Sec. 8145. "All fines, exclusive of the expenses of the court, collected under and by virtue of this article shall be immediately paid into the treasury of the school trustee or board of each county where such fines are collected: Provided, however, that nothing contained herein shall be so construed as to apply to any municipality, township, county, or other subdivision of the State."

It is said for defendant that the statute quoted is violative of section 4 of article 2 of the State Constitution which says "that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security for these things is the principal office of government, and that when government does not confer this security, it fails of its chief design." That it violates section 30, article 2 of said Constitution which says "that no person shall be deprived of life, liberty or property without due process of law;" and that it violates the fourteenth amendment of the Constitution of the United States, which provides that: "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It was ruled in State v. Loomis, 115 Mo. 307, that sections 7058 and 7060, Revised Statutes of 1889, making it a misdemeanor for any corporation, person or firm engaged "in manufacturing or mining" to issue in payment of the wages of his or its employees any order, check, memorandum, token or evidence of indebtedness, payable otherwise than in lawful money of the United States, unless the same was negotiable and redeemable at its face value in cash or in goods or supplies, at the option of the holder, at the store or other place of business of the corporation, person or firm, is class legisla-

tion and as such is violative of the constitutional guaranty of ''due process of law'' and void.   The decision is placed upon the broad ground that the sections of the statute then under consideration were not ''due process of law'' within the meaning of the Constitution, and upon the further grounds that they are an interference with the right to make reasonable and proper contracts in conducting a legitimate business which the Constitution guarantees to every one when it declares that he has a natural, inalienable right of acquiring, possessing and protecting property.

The same rule is announced with respect to similar statutes in Commonwealth v. Perry, 155 Mass. 117; Godcharles & Co. v. Wigeman, 113 Pa. St. 431; State v. Goodwill, 33 W. Va. 179; State v. F. C. Coal & Coke Co., 33 W. Va. 188; Millett v. People, 117 Ill. 294; Frorer v. People, 141 Ill. 171; Ritchie v. People, 155 Ill. 98; In re Jacobs, 98 N. Y. 98; People v. Gillson, 109 N. Y. 389.

But the State insists that the statute of 1899, upon which this prosecution is bottomed, is to be differentiated from the statute of 1889, under which the Loomis case was decided, in that all questions with respect to class legislation and of a discriminating character are eliminated therefrom as to their constitutionality, and it applies to all persons, companies and corporations, of every kind and description in this State.   It is true that one of the principal points upon which the Loomis case turned was that the statute upon which that case was founded applied alone to corporations, persons or firms engaged in manufacturing or mining in this State, and was not general in its character, was class legislation and therefore unconstitutional and void, while the statute upon which this prosecution is based applies alike to any person, firm or corporation in this State who pays for the wages of labor, and is not open to the specific objection of class legislation.

But defendant contends that the statute is invalid because it invades the constitutional right to contract.

In Commonwealth v. Perry, 155 Mass. supra, a statute (Stat. of 1891, c. 125, sec. 1) which provides that no employer shall impose a fine upon an employee engaged at weaving, or withhold his wages in whole or part, "for imperfections that may arise during the process of weaving," was held to be in conflict with the Constitution of that State "in forbidding the employer to withhold any part of the contract price from such weaver upon his doing the work improperly, and in requiring such an employer to pay the same price for inferior work as for good work, and particularly with the first article of the Declaration of Rights, which secures to all the right 'of acquiring, possessing, and protecting property.' "

In passing upon an act of the Legislature of the State of Pennsylvania, entitled, "An act to secure to operatives and laborers engaged in and about coal mines, manufactories," etc., of June 29, 1881, the Supreme Court of that State, in the case of Godcharles & Co. v. Wigeman, 113 Pa. St. supra, said: "The first, second, third and fourth sections of the act of June 29, 1881, are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the Legislature to do what, in this country, can not be done; that is, prevent persons who are *sui juris* from making their own contracts. The act is an infringement alike of the right of the employer and the employee; more than this, it is an insulting attempt to put the laborer under a legislative tutelage, which is not only degrading to his manhood, *but* subversive of his rights as a citizen of the United States. He may sell his labor for what he thinks best, whether money or goods, just as his employer may sell his iron or coal, and any and every law that proposes to prevent him from so doing is an infringement of his constitutional privileges, and consequently vicious and void."

To the same effect is State v. F. C. Coal & Coke Co., 33 W. Va. 188; also Frorer v. People, 141 Ill. 171.

The State contends, however, that in the circumstances covered by the act in question, the employer and employee are not upon an equal footing, but that the laborer, owing as a rule to his necessities, is at a disadvantage, and that as the right to contract is not absolute, the State in the exercise of its police powers had the authority to pass the act in question as a police regulation. Under its police power the State has the right to enact and enforce all such laws not in conflict with some provision of the State or Federal constitution as may properly be deemed necessary for the safety, health, and morals of its people, but it is contended by the State that the right of contract between employer and employees is also a legitimate subject for the exercise of this power.  This contention finds support in the case of Hancock v. Yaden, 121 Ind. 366, wherein it was held that the Legislature of that State has such authority over the right to contract as to prohibit contracts from being made in advance, waiving the right to payment in the lawful medium of payment.  That case was repudiated, however, by this court in State v. Loomis, supra.

But in the case of Harbison v. Knoxville Iron Co., 103 Tenn. 421, it was held, upon an exhaustive and able review of the authorities that an act of the Legislature of that State (Acts 1899, ch. 11), which required employers to pay in money, at face value, if presented on a regular pay-day, or not less than thirty days after issuance, all orders for merchandise and other like papers issued to employees for wages, is not an unconstitutional abridgment of the employer's right to contract.  That the statute does not violate the ''due process of law'' or the ''law of the land'' clause of either the federal or State Constitutions.  That it is both ''due process of law'' and, ''the law of the land,'' and likewise a legitimate exercise of the police power.

That case was affirmed by the Supreme Court of the

United States in Knoxville Iron Company v. Harbison, 183 U. S. 13, in which it was held that the act of the Legislature of the State of Tennessee requiring the redemption in cash of store orders or other evidences of indebtedness issued by employers in payment of wages due to employees, does not conflict with any provision of the Constitution of the United States relating to contracts.

In Schaffer v. Union Mining Co., 55 Md. 74, it was assumed that the Legislature had the power to enact a law prohibiting a corporation from paying wages to its employees otherwise than in lawful money, or entering into a contract for payment in any other way.

So it was held in St. Louis, Iron Mountain and St. Paul Railway Company v. Paul, 173 U. S. 404, that an act of the Legislature of the State of Arkansas of March 25, 1889, entitled an act to provide for the protection of servants and employees of railroads, is not in conflict with the provisions of the Constitution of the United States. But in that case the act under consideration was passed ''for the protection of servants and employees of railroads,'' and was upheld as an amendment of railroad charters, such exercise of the power reserved being justified on public considerations, and a duty was specially imposed for the failure, to discharge which, the penalty was inflicted.

But we are of the opinion that under the great weight of authority the act in question can not be upheld, in so far as defendant company and its adult employees are concerned, upon the ground of its being a police regulation, for it can not be said that the defendant, in operating its tie and timber business, is anyway pursuing a public business, or has devoted its property to a public use, and the statute must be held unconstitutional upon the ground that it interferes with or abridges the right of persons competent to contract with each other with respect to the manner in which defendant's employees were to be paid for their services.

The right to labor or employ labor, and make contracts with respect thereto, upon such terms as may be agreed upon, is both a liberty and property right, and is included in the guaranty of the Constitution which provides ''that no person shall be deprived of life, liberty or property without due process of law.'' [Sec. 30, art. 2, Constitution.] Nor can such right to contract be arbitrarily interfered with, but may be subject to limitations growing out of duties which the individual owes to society, but such limitation must be upon some reasonable basis, and not arbitrarily. [Ritchie v. People, 155 Ill. 98.]

In Leep v. Railroad, 58 Ark. 407, it is held that: ''When the subject of contract is purely and exclusively private, unaffected by any public interest or duty to person, to society or government, and the parties are capable of contracting, there is no condition existing upon which the Legislature can interfere for the purpose of prohibiting the contract or controlling the terms thereof.''

In State v. Loomis, supra, it is said:

''It is now axiomatic that, 'everything which may pass under the form of an enactment is not therefore to be considered the law of the land.' Speaking of these words, Mr. Justice JOHNSON said: 'They were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.' [Bank of Columbia v. Okely, 4 Wheat. 235.] Law of the land is said to mean a law binding upon every member of the community under similar circumstances. [Wally's Heirs v. Kennedy, 2 Yerg. 554.] The word 'liberty' as used in these constitutional declarations means more than freedom of locomotion. It includes and comprehends, among other things, freedom of speech, the right of self-defense against unlawful violence, and the right to freely buy and sell as others may. [2 Story on the Constitution (5 Ed.), sec. 1950.]

"From the foregoing descriptions and definitions of 'due process of law' or its equivalent 'law of the land' it must be evident that this constitutional safeguard condemns arbitrary, unequal and partial legislation; and it is equally clear that the right to make contracts and have them enforced, as others may, is one of the rights so secured to every citizen. There is no doubt but many of our legislative enactments operate upon classes of individuals only, and they are not invalid because they so operate, so long as the classification is reasonable and not arbitrary. Thus, it is perfectly competent to legislate concerning married women, minors, insane persons, bankers, common carriers and the like; and the power of the legislature to prescribe police regulations applicable to localities and classes is very great, because such laws are designed to protect property and the safety, health and morals of the citizens. But classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. Thus the Legislature may fix the age at which persons shall be deemed competent to contract for themselves, but no one will claim that competency to contract can be made to depend upon stature or color of the hair. Such a classification for such a purpose would be arbitrary and a piece of legislative despotism, and therefore not the law of the land.

"When speaking upon this subject, Judge COOLEY says: 'The doubt might also arise whether a regulation made for any one class of citizens, entirely arbitrary in its character, and restricting their rights, privileges or legal capacity in a manner before unknown to the law, could be sustained, notwithstanding its generality. Dis-

tinctions in these respects must rest upon some reason upon which they can be defended—like the want of capacity in infants and insane persons; and, if the Legislature should undertake to provide that persons following some specified lawful trade or employment should not have capacity to make contracts, or to receive conveyances, or to build such houses as others were allowed to erect, or in any other way to make such use of their property as was permissible to others, it can scarcely be doubted that the act would transcend the due bonds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict. To forbid to an individual or a class the right to the acquisition or enjoyment of property in such manner as should be permitted to the community at large, would be to deprive them of *liberty* in particulars of primary importance to their "pursuit of happiness;" and those who should claim a right to do so ought to be able to show a specific authority therefor, instead of calling upon others to show how and where the authority is negatived.' [Cooley's Constitutional Limitations (6 Ed.), 484.]

"There can be no doubt but the Legislature may regulate the business of mining and manufacturing so as to secure the health and safety of the employees, but that is not the scope of the two sections of the statute now in question. They single out those persons who are engaged in carrying on the pursuits of mining and manufacturing, and say to such persons, you can not contract for labor payable alone in goods, wares and merchandise. The farmer, the merchant, the builder and the numerous contractors employing thousands of men may make such contracts, but you can not. They say to the mining and manufacturing employees, though of full age and competent to contract, still you shall not have the power to sell your labor for meat and clothing alone as others may.

Vol 181 mo—36

"It will not do to say these sections simply regulate payment of wages, for that is not their purpose. They undertake to deny to the persons engaged in the two designated pursuits the right to make and enforce the most ordinary every-day contracts—a right accorded to all other persons.. This denial of the right to contract is based upon a classification which is purely arbitrary, because the ground of the classification has no relation whatever to the natural capacity of persons to contract.

"Now it may be that instances of oppression have occurred and will occur on the part of some mine-owners and manufacturers, but do they not occur quite as frequently in other fields of labor? Conceding that such instances may and do occur, still that furnishes no reasonable basis for depriving all persons engaged in the two lawful and necessary pursuits of the right to make and enforce every-day contracts.

"Liberty, as we have seen, includes the right to contract as others may; and to take that right away from a class of persons following lawful pursuits is simply depriving such persons of a time-honored right which the Constitution undertakes to secure to every citizen. Applying the principles of constitutional law before stated, we can come to no other conclusion than this, that these sections of the statute are utterly void. They attempt to strike down one of the fundamental principles of constitutional government. If they can stand, it is difficult to see an end to such legislation, and the government becomes one of special privileges, instead of a compact 'to promote the general welfare of the people.' We place our conclusion on the broad ground that these sections of the statute are not 'due process of law' within the meaning of the Constitution.

"Statutes like or analogous to the one in hand have been enacted in several of the States of this Union, and they have been the subject of consideration of several courts of last resort, and it is well to examine those

cases with some detail; for it must be obvious that general constitutional declarations are the better understood when seen in the light of the facts of the particular cases in which they have been applied.

"The Supreme Judicial Court in Massachusetts had under consideration, in Commonwealth v. Perry, 28 N. E. 1126, a statute which provides that 'no employer shall impose a fine upon or withhold the wages, or any part of the wages, of an employee engaged at weaving, for imperfections that may arise during the process of weaving.' It was held that if the act went no further than to forbid the imposition of a fine for imperfect work it might be sustained, but that the attempt to make inferior work answer a contract for good work presented a different question; that the right to acquire, possess and protect property includes the right to make reasonable contracts, which shall be under the protection of the law. Says the court: 'If it (the statute) be held to forbid the making of such contracts, and to permit the hiring of weavers only upon terms that prompt payment shall be made of the price for good work, however badly their work may be done, and that the remedy of the employer for their derelictions shall be only by suits against them for damages, it is an interference with the right to make reasonable and proper contracts in conducting a legitimate business, which the Constitution guarantees to every one when it declares that he has a "natural, inalienable right" of "acquiring, possessing and protecting property."' "

For these considerations the judgment is reversed and the defendant dicharged.

All concur.