## COOKS', WAITERS' AND WAITRESSES' LOCAL UNION et al. v. PAPAGEORGE et al. (No. 6558.)

(Court of Civil Appeals of Texas. San Antonio. May 11, 1921.)

**1. Injunction ⊂⊃101(2)—Acts of labor union and members in striking and picketing in disregard of law.**

The acts of a labor union of cooks, waiters, and waitresses, and its members, when restaurant proprietors refused to renew their contract with the union for another year, in calling a strike at the restaurant and picketing it with sandwich signs, and in urging customers not to patronize the place as unfair to union labor, were an attack upon the rights of men engaged in a lawful business, with an utter disregard of those rights, and were in absolute contempt of the law as declared in Texas.

**2. Monopolies ⊂⊃12(1)—Acts of striking labor union and members in violation of statutes on trusts.**

The acts of a labor union of cooks, waiters, and waitresses, and its members, in calling a strike in the restaurant of proprietors who refused to renew their contract with the union for another year, and in picketing and attempting to dissuade customers from entering the place, were violative of Rev. St. 1911, arts. 7796–7799, on the subject of trusts and restraints of trade.

**3. Monopolies ⊂⊃12(1) — Statute permitting trade unions to induce persons to quit employment does not apply to illegal strike.**

Rev. St. 1911, art. 5245, declaring that it shall not be unlawful for members of trade unions or other organizations to induce by peaceable means any person to accept or relinquish any employment, does not apply to the case of a labor union of cooks, waiters, and waitresses, and its members, who, on account of restaurant proprietors refusing to renew their contract with union for another year, called a strike in the place, picketed, and attempted to dissuade customers from entering.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Constitutional law ⬚⟲90—Restraint of labor union from injuring business of offending employer not a violation of right of free speech.**

To restrain a striking labor union and its members from destroying the business of an offending employer by their language, publications, and acts is not to infringe upon the constitutional right of free speech.

**5. Injunction ⬚⟲101(2)—Equity will restrain unlawful acts interfering with rights to sell and purchase labor.**

Whenever the rights freely to sell and freely to purchase labor are sought to be invaded, as by a labor union's strike and acts of picketing, etc., pursuant thereto, a court of equity will restrain such unlawful acts.

**6. Injunction ⬚⟲101(1) — Conspiracy of employers does not justify labor union and members in invading property rights of employers.**

Though employers have conspired with others to destroy the rights and privileges of a labor union and its members, such fact does not justify the union and its members by means of a strike in invading the property rights of the employers.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Nick Papageorge and others against the Cooks', Waiters', and Waitresses' Local Union and others. From judgment for plaintiffs, defendants appeal. Affirmed.

Simpson & Moore, Power, Dryden & Rawlings, W. E. Myres, and W. B. Ammerman, all of Fort Worth, for appellants.

Charles T. Rowland, and Marvin H. Brown, both of Fort Worth, for appellees.

FLY, C. J. Appellees, four in number, owners of a certain restaurant or café in Fort Worth, known as the Mecca Café, instituted this action against the Cooks', Waiters', and Waitresses' Local Union No. 748, a voluntary association of persons forming what is commonly known as a labor union, and Jap L. Nolen, its president, A. R. Jenkins, its business agent and walking delegate, and Bonny Childs, its secretary and treasurer, and all the associates, agents, employés, and members of said union, being about 300 in number, to restrain them from picketing said restaurant and interfering with its business by certain unlawful acts set out in detail in the petition, by which they were seeking to destroy its patronage and cause great financial damage to its owners. Appellants filed a number of exceptions to the petition, which were overruled, and sought to defend on the ground that appellees were seeking to destroy the union, and that a conspiracy had been formed for that purpose, and sought to dissolve a temporary injunction granted by the court. The court overruled the motion to dissolve and enjoined appellants from doing certain specified acts and from boycotting appellees' place of business and from going into and near said place of business for the purpose of interfering with the business and intimidating its employés or assaulting or threatening them.

[1] The facts show that appellees were conducting the Mecca Café in Fort Worth, and had been operating under a contract with appellants known as a "closed shop" agreement by which appellees bound themselves to employ only members of the local union and to pay the scale of wages named in the contract and to work the employés only the number of hours a day and per week specified therein; that such contract expired on June 21, 1920, and at its expiration appellants demanded that a new contract containing the same stipulations as the old one be signed and executed, and when appellees refused to sign such contract they were told by appellants that they would call a strike, would take the union card out of the place of business, and that the union employés would walk out. Upon appellees refusing to accede to the demands made by appellants, the union card was taken from the restaurant, and appellees' employés who were members of the local union, walked out about 12 o'clock noon on June 24, 1920. Appellants agreed to and did place pickets about the place of business of appellees for the avowed purpose of coercing and forcing appellees to sign the contract they desired to have executed. The pickets were stationed and maintained throughout the hours of business, from the opening of the restaurant in the early morning until about 9 o'clock at night, being continued until such acts were restrained by the court. The pickets carried what were denominated "sandwich signs," which had printed in red letters on them "Patronize a Union House," underneath which was a union card and the inscription, "Look for this label when you eat," and other inscriptions. The pickets also distributed union newspapers, in which veiled threats were made against appellees. Efforts were constantly made to prevent people from entering and eating in the restaurant of appellees, such language being used to passers-by as, "Pass it up, brothers," "This is a non-union place of business," "Help the union and they will help you," "Don't eat in there; this place is unfair to union labor," and, "This is an unfair place." All of these acts were done and words spoken to injure the business of appellees by deterring persons from patronizing the restaurant, and they caused an actual loss to appellees of from $400 to $500 but appellants are insolvent. The whole testimony tends to show that a conspiracy had been formed and was being carried into execution by appellants to either force appellees to sign a contract prepared and presented by appellants, requiring appellees to employ only

members of the union, at certain prices and for certain working hours, or, in the event they refused to sign the contract which was dictated by appellants, then to destroy the business of appellees. Injury and damage to the property and business of appellees, or its destruction, if the arbitrary demands of appellants were not complied with, could have been the only motives actuating the picketing and other overt actions of appellants. The uncontroverted evidence shows the unlawful interference upon the part of appellants with the property rights of others, because those others did not agree with the proposition that appellees should relinquish the employment of their servants to appellants, and felt disposed to claim the right to fix the wages of those employed by them. Not only were the acts of appellants an attack upon the rights of men engaged in a lawful business, with an utter disregard of those rights, but were in absolute contempt of the law as applied to them directly by the court of last resort in Texas.

[2] In the case of Webb v. Cooks', Waiters' and Waitresses' Union No. 748, 205 S. W. 465, this identical organization and its officers and members were enjoined from doing almost the identical act of which they were guilty in this instance. Every point made in this case was made in that by these same appellants, and each was decided against them in a very able and exhaustive opinion by Chief Justice Conner of the Fort Worth Court of Civil Appeals, and by a refusal of a writ of error the Supreme Court put the stamp of its approval upon the decision. The courts of the different states are fully reviewed in that decision, and with remarkable unanimity they sustain the Texas decision. Not only are appellants in direct contempt of the law as stated in the decision cited, but have acted in the face of direct statutes on the subject of trusts in this state. Articles 7796–7799.

[3] Those statutes cover the acts of appellants and declare that they are in restraint of trade and illegal. As shown in the cited opinion, article 5245, which declares that it shall not be unlawful for members of trades unions and other organizations to induce by peaceable means any person to accept or relinquish any certain employment, does not apply to cases like the one now under consideration. That statute evidently refers to the ordinary strike where employés leave the employment of another, with whom they are at disagreement. No law can destroy or impair the right of men to quit their employment, and any impairment of that right is denied by the statute. But, as in the Webb Case, a different state of facts appears in this case. As said by the court in the Webb Case:

"Appellant has discharged no employé nor retained one objectionable to the other employés. Nor does it appear that any one or more of appellant's employés are dissatisfied with appellant's government, with the wages paid, or hours of service required. So that the question is narrowed to the simple one of whether in enacting article 5245 it was the legislative purpose to authorize any character of coercion or intimidation to compel a person in business necessitating the employment of servants to employ such persons only as shall be designated by another person or association of persons, and to permit such other person or association to dictate the rate of wages to be paid, the number of hours to serve, etc. * * * The right of a citizen in this free republic to conduct any lawful business in any lawful manner that he may think best in view of his situation and circumstances is too important to yield at the behest of any private person or association organized to promote the interest of but a single class of our people, laborers though they may be."

[4] One of the defenses that is offered for the unlawful acts of appellants is the plea that to restrain appellants from destroying the business by their language, publications, and acts is to destroy the constitutional right of free speech, but that is a specious plea without reason upon which to base it. The individual right of free speech is not invaded by the restraining order, but it merely says to appellants:

"You must respect the rights of others, which are as sacred as yours, and which must be protected."

The Constitution, as in all instances, guarantees freedom, not license and crime. The principle that runs through the entire warp and woof, as a scarlet thread of American law, is that each person must so use his own rights as not to invade the rights of others; and no constitutional law will, when properly administered, give special privileges to any man or class of men.

No power exists in our government to curtail the liberty of speech or of the press, and no such attempt was made in this case. It is recognized that every person has the absolute right to express his opinion and speak his mind on any subject, and no one has the authority to declare what any man may think or speak. It is recognized by every American that without freedom of speech the government could not exist as a people's government. But, as said by the Supreme Court in Ex parte George Tucker, 110 Tex. 335, 220 S. W. 75:

"Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character. When they do, they amount to conduct, or threatened conduct, and for that reason may * * * be restrained."

See, also, Ins. Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L. R. A. (N. S.) 483.

[5] The Constitution grants to every man, under the protection of the American flag, the right to make contracts for his personal services, free from hindrance or obstruction

by his fellow men, and he has the inalienable right to freely use his hands for whom he pleases, upon such terms as he pleases. These rights include both the right to sell and the right to purchase labor, and no law would be upheld that would deprive the laborer and employer of the right to contract with one another. Whenever these rights are sought to be invaded, a court of equity will restrain such unlawful acts. 6 R. C. L. § 255, pp. 271, 272; O'Brien v. People, 216 Ill. 354, 75 N. E. 108, 108 Am. St. Rep. 219, 3 Ann. Cas. 966; State v. Missouri Tie Co., 181 Mo. 536, 80 S. W. 933, 65 L. R. A. 588, 103 Am. St. Rep. 614, 2 Ann. Cas. 119; State v. Muller, 48 Or. 252, 85 Pac. 855, 120 Am. St. Rep. 805, 11 Ann. Cas. 88; Leep v. Railway, 58 Ark. 407, 25 S. W. 75, 23 L. R. A. 264, 41 Am. St. Rep. 109; Coal Co. v. People, 147 Ill. 66, 35 N. E. 62, 22 L. R. A. 340, 37 Am. St. Rep. 206; Jensen v. Cooks' etc., Union, 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302.

[6] Another defense offered is the plea that appellees have conspired with others to destroy the rights and privileges of appellants to force their contracts upon others, by the unlawful methods pursued by them. If such an organization was in existence, that fact would not justify the invasion of the property rights of others. This would not justify them to take the law into their own hands, and would not form the basis of any action in law or in equity to prevent such organization. The law does not recognize the right of any association to dictate to others what contracts shall or shall not be made, and there could be no invasion of any such claim upon the part of any association, and if such right existed and such invasion of it was contemplated, appellants have no authority to take the law in their own hands and seek to redress their wrongs in their own way.

We are of opinion that appellants fully understand from what acts they have been enjoined by the judgment in this case, and such judgment will not interfere with them in the exercise of any constitutional or legal right. All it does is to prohibit them from interfering with the rights of others. The assignments of error are without merit and are overruled.

The judgment is affirmed.