PIETRINA GUISTI ET AL. V. GALVESTON TRIBUNE.

No. 2248.    Decided November 13, December 23, 1912.

1.—Libel.

A publication is libelous and actionable under article 5595, Rev. Stats., 1911, if by such innuendo as may not extend, but simply explain the effect and meaning of the language used and identify the person referred to, it appear of such character as tends to injure the reputation of such person and expose her to public hatred, contempt, or ridicule, or tends to impeach her honesty, integrity, virtue, or reputation.   (P. 504.)

### 2.—Same—Common Law and Statute.

The statute is not a mere re-enactment of the common law without enlarging it. It materially modifies the law, in that a libelous publication becomes actionable without proof of malice though not libelous per se at common law; nor is it now necessary, in case of a publication not so libelous per se, as in case of imputation of unchastity, irrespective of the effect of the penal code, to prove special damages; also, in case of defamation not so libelous per se, damages may now be recovered for mental anguish, without proof of actual damages. The statute was obviously intended to cover the entire subject of libel without regard to the rules of the common law, and to enlarge materially the rights of those made the subject of libelous publications. (Pp. 504, 505.)

### 3.—Libel—Illegal Liquor Selling.

A publication which, in effect, falsely charged plaintiff, a young woman, with being a bar-maid in her father's saloon engaged in illegally selling intoxicating liquors to students, though not charging her with a penal offense, was sufficient to subject her to public contempt, and impeach her integrity and reputation, and was actionable under the statute. (Pp. 505, 506.)

### 4.—Same—Unchastity—Innuendo.

A publication which stated that plaintiff, a young woman, was found behind the bar conducting the liquor business and selling liquor to students in viola* tion of law, further stated: "The place named above has been complained of, and it is understood from neighbors that the students inclined to patronize such places are attracted there for some reason." Held that an inference from this language that it called in question the womanly integrity of plaintiff and was an impeachment of her virtue was not so unreasonable that such meaning might not be attached to it by proper allegations by way of innuendo. (Pp. 506, 507.)

### 5.—Same—Question of Fact.

Where the meaning of the language used, and alleged by innuendo to convey a libelous significance, is ambiguous and of doubtful import, it is proper to submit the question to the jury. The question is, not what the court would consider the reasonable and natural meaning of the language under the circumstances, nor what idea the writer intended to convey, but what construction would be put upon it by the ordinary reader. (Pp. 506, 507.)

### 6.—Finding by Jury—General Damages.

A finding by the jury, in an action for libel, of general damages only in plaintiff's favor, can not be taken as a finding against the allegation of a charge of unchastity as one of the grounds for recovery. (P. 507.)

ON MOTION FOR REHEARING.

### 7.—Practice in Supreme Court—Remand or Rendition of Judgment.

When the appellate court, though finding the allegations of plaintiff established, reverses because of their legal insufficiency to support the recovery appealed from, the Supreme Court, if it find this conclusion unwarranted, will reverse it and affirm the judgment of the trial court, instead of remanding. (Pp. 507, 508.)

Error to the Court of Civil Appeals, First District, in an appeal from Galveston County.

Pietrina Guisti sued the Galveston Tribune for libel and recovered judgment. On defendant's appeal, this was reversed and judgment rendered in its favor. Appellee, plaintiff, then obtained writ of error.

*Geo. C. Clough, Marsene Johnson, Aubrey Fuller,* and *Elmo Johnson,* for plaintiff in error.—The statute of Texas has enlarged on the

common law definition of libel; any defamation tending to injure the reputation, and thereby expose that person to public hatred, contempt or ridicule, or to impeach the honesty, integrity, virtue or reputation, is a libel. Art. 3282 a, Acts 1901, p. 30, sec. 1; Walker v. San Antonio Light, 30 Texas Civ. App., 165; McDavid v. Houston Chronicle, 146 S. W., 252; San Antonio Light v. Lewy, 52 Texas Civ. App., 22; Cranfill v. Hayden, 97 Texas, 544.

An article which charges, (a) that the plaintiff was a barmaid in a common saloon, and (b) as such, sold intoxicating liquors to students of an institution of learning, and (c) in violation of law, is three times libelous, as tending to injure her reputation, to impeach her honesty, integrity, virtue and reputation, and to expose her to public hatred, contempt or ridicule. Acts 1901, p. 30, sec. 1; Belo v. Smith, 91 Texas, 225; Gates v. N. Y. Recorder, 115 N. Y., 228; Com. v. Bonnor, 9 Met. (Mass.), 410; Cranfill v. Hayden, 97 Texas, 544.

Whether or not matter complained of is libelous, as tending to injure the reputation and to expose the person to public hatred, contempt, ridicule, or to impeach the honesty, integrity, virtue or reputation, is *a question of fact, to be determined by the jury* as any other fact. Belo v. Smith, 91 Texas, 225; Walker v. San Antonio Light, 30 Texas Civ. App., 165; More v. Bennett, 48 N. Y., 472; Garrett v. Dickinson, 19 Md., 418; Truman v. Taylor, 4 Iowa, 424; Post v. Hallam, 59 Fed., 530; Cooper v. Perry Dud. Ga., 247; Logan v. Logan, 77 Ind., 558; Morgan v. Livingston, 2 Richmond Law N. C., 573; Ogden v. Riley, 25 Am., 513; San Antonio Light v. Lewy, 52 Texas Civ. App., 22; Sanders v. Hall, 22 Texas Civ. App., 282.

Even though the writing does not charge crime, yet it is libelous if tending to expose persons to public hatred, contempt, ridicule and disgrace. Thus to charge one with being an anarchist is libelous. Cerveny v. Chicago, 13 L. R. A., 864; Johnson v. Stebbins, 5 Ind., 364; Over v. Hildebrand, 92 Mo. App., 437, 94 Am. Dec., 455, 48 Am. Rep., 511; Roe v. Grever, 35 Tenn., 664.

· In determining whether or not language used is libelous, it should be construed as if read out of court; if in its popular and ordinary sense it charges the commission of an offense, it is libelous. Belo v. Smith, 91 Texas, 225; More v. Bennett, 48 N. Y., 472; Morgan v. Livingston, 2 Richmond Law N. C., 573; Bettner v. Holt, 70 Cal., 270; Dorland v. Patterson, 23 Wend., 422.

Where the defendant charged the plaintiff with a violation of the law, an action for libel is maintainable without regard as to whether technically the plaintiff was charged with crime. Halsey v. Stillman, 48 Ill. App., 413; Wilson v. McCrory, 86 Ind., 170; Robinson v. Kelser, 22 N. H., 323; Cook v. Bostwick, 12 Wend., 48; Webster v. Sharpe, 116 N. E., 466; 21 S. E., 912.

In libel, in determining whether words are actionable per se, they are to be taken in the sense in which they would naturally be understood by those who heard them. Whitney v. Janesville, Fed. Case, 17,590; McGowan v. Manifee, 18 Am. Dec., 178; Duncan v. Brown, 54 Ky., 186; Stroebel v. Wheney, 18 N. W., 98; Butterfield v. Buffum, 9 N. H., 156; English v. English, 11 Wkly. Law Bul., 133; Lukeheart

v. Byerly, 53 Pa., 418; Campbell v. Campbell, 54 Wis., 90; Bradley v. Cramer, 59 Wis., 309.

Where the language of the article is susceptible of two meanings, the jury may take into account the accompanying words and the surrounding facts. Riddell v. Thayer, 127 Mass., 487.

*Wm. B. Lockhart,* for defendant in error.—The language of the article complained of is not ex vi termini actionable, nor are the words composing the article, when construed together, sufficient to support the innuendoes alleged by plaintiff, and this being so, the court should have sustained defendant's general demurrer. Morrison v. Dean, 104 S. W., 505; Harris v. Santa Fe Townsite Co., 125 S. W., 77; Belo v. Smith, 91 Texas, 225; Hitzfelder v. Koppelman, 30 Texas Civ. App., 162; McCarthy v. Miller, 57 S. W., 973-4; Zeliff v. Jennings, 61 Texas, 466; Dem. Pub. Co. v. Jones, 83 Texas, 306; Cranfill v. Hayden, 97 Texas, 559; 18 Am. & Eng. Enc. Law, 866, 937, 975, 977, 978; 25 Cyc., 335, 357, 358, 359; Texas Laws of 1901, p. 30, Sayle's Supplement, 1897-1904, p. 318; Baskin-McGregor Liquor Law, Acts 1907, p. 263, sec. 15, and sec. 25, p. 267.

Where an innuendo has to be resorted to to show the libelous character of the language complained of, special damages must be alleged in order to state a cause of action, and the damages alleged by plaintiff were general and not special damages, wherefore defendant's demurrer should have been sustained. Morrison v. Dean, 104 S. W., 505; Hirschfield v. Bank, 83 Texas, 452; Knapp & Co. v. Campbell, 14 Texas Civ. App., 199; Fry v. McCord, 33 S. W., 568; McCarthy v. Miller, 57 S. W., 973; Townshend, Sland. & Libel, sec. 146 (4th ed.); 18 Am. & Eng. Enc. Law, 1087, 8.

We submit that the undisputed evidence and the article itself showed that it was about a matter of public concern, to-wit: the sale of liquor to students of the medical department of the University of Texas; that it was a reasonable and fair comment regarding such matter, and the conducting of the store of one T. Guisti in connection therewith; that it was published for general information and without actual malice; and that the court therefore erred in leaving the question for the jury to determine and in failing to instruct the jury to find for defendant on its plea of privilege. Texas Libel Law, Acts 1901, p. 30, sec. 3, par. 4; Railway Co. v. Floore, 42 S. W., 611; Cotulla v. Kerr, 74 Texas, 94; Cranfill v. Hayden, 97 Texas, 561; Cranfill v. Hayden, 55 S. W., 808, 809; Railway Co. v. Lewis, 63 S. W., 1091; Telegraph Co. v. Burgess, 60 S. W., 1024; Hunnicutt v. State, 75 Texas, 242.

Even if it should be held that the court was justified in leaving the question to the jury for determination, the verdict is so against the preponderance of the evidence as to require a reversal of the case. Railway Co. v. Schmidt, 61 Texas, 285.

The court should have instructed the jury that the publication was privileged, and, there being no evidence of actual malice, to find for defendant. Cranfill v. Hayden, 97 Texas, 561; Bradstreet Co. v. Gill, 72 Texas, 121; Railway Co. v. Floore, 42 S. W., 611; Cotulla v. Kerr, 74 Texas, 94; Cranfill v. Hayden, 22 Texas Civ. App., 656.

ON MOTION FOR REHEARING.

Even if it be conceded that the Supreme Court is correct in reversing the judgment of the Court of Civil Appeals upon the general demurrer, it was and is without jurisdiction to affirm the judgment of the trial court, for the reason that in so doing it has and necessarily must have passed upon questions of fact raised by defendant in the record, which the Supreme Court has repeatedly held that, under the Constitution and Laws of the State of Texas, it is without jurisdiction to do. Constitution of Texas, art. 5, secs. 3 and 6; Rev. Stats., 1911, arts 1521, 1590; Railway Co. v. Goswick, 98 Texas, 477; Leary v. Peoples, etc., Assoc., 93 Texas, 1; Rogers v. Railway Co., 100 Texas, 48.

The Supreme Court, in reversing the judgment of the Court of Civil Appeals sustaining the general demurrer, only had jurisdiction to, and therefore should have remanded the case to that court for a decision of all the other questions raised by defendant upon the record. Const., art. 5, secs. 3, 6; Rev. Stats., 1911, arts. 1521, 1589, 1590.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was brought in the District Court of Galveston County on June 14, 1909, by Pietrina Guisti, at the time an adult unmarried woman, against the Galveston Tribune, a private corporation, to recover damages alleged to have been incurred by reason of a certain publication made in the columns of the Galveston Tribune, a daily paper published and circulated in the County of Galveston and in other portions of the State. Pending the suit plaintiff intermarried with Amerigo Collucci, who was made a party plaintiff *pro forma.* The cause of action was based upon the following publication, to-wit:

"As stated in the Tribune Friday evening, one of the first licenses issued by the City since Aug. 1st for the conducting of a corner grocery saloon within the residence section prohibited by the districting ordinance was to T. Guisti to sell liquor at 902 Mechanic street.

"One of the main objections to this saloon previous to the passing of the ordinance was its close proximity to the State Medical College and the allegation that the proprietor of the place violated the provisions of the Baskin-McGregor law and the conditions of his bond by selling liquor to students. With the re-opening of the bar-room the complaints to the dean of the college have been again renewed and a personal investigation of the place by a representative of this paper this morning revealed the following facts:

"The place is open as usual for business, and, when the reporter called, liquor was being sold over the bar, together with lunch; in fact, at the time a man was standing at the bar drinking a bottle of porter and eating a sandwich.

"The proprietor of the place was not present, but a young woman behind the bar, in answer to the question as to whether or not students were patrons of the place, stated in an excited way that 'she was going to tell Dr. Carter to put bells around the necks of the students, so they could tell who they were. When we ask young

men if they are students, they get mad and tell us that it is none of our business. We can't tell, and we are here to do business.' Asked if there had been any sales to students since the place reopened, she admitted that there had been and that it took place on Saturday morning. 'Two young men came in and asked for some wine. They told me they were not students and I sold them what they wanted; and after they had drank it they said they were students and laughed.' On the door leading from 9th street into the barroom annex, on the wall facing the door, and behind the bar, are signs printed by hand on white card-board with the following words: 'No liquors of any kind sold here to students.'

"The young woman pointed to these signs and stated that they were put there on Saturday evening for the students to read themselves when they came in. Asked if she was not familiar with the provisions of the law regulating such sales, and that dealers are supposed to know whether customers are students or not, she answered 'that she did not know for sure,' but that 'they did not want to sell to students.'

"It is set forth in all liquor dealers' bonds, among other things, that the bond is conditional that the principal, agent or employe will not sell or permit to be sold or given away any spirituous, vinous or malt liquors, or medicated bitters to a student of any institution of learning.

"It is also stated by legal authorities that ignorance of this law or of the fact that the dealer or employe cannot tell who a student is does not in any manner excuse; they are supposed to know their customers, and in case of doubt to take the safe course and refuse to sell.

"The place named above has been complained of, and it is understood from neighbors that the students inclined to patronize such places are attracted there for some reason.

"On two of the opposite corners are located corner groceries which formerly had bar annexes, but neither of them have as yet renewed their licenses. A woman in charge of one of the places stated this morning that she did not intend to take out a license, as she realized that the time was short when the place would be allowed to exist and she was satisfied to continue her other business without beer."

Plaintiff's petition contains all the allegations essential to establish her cause of action against the defendant for damages for the publication of a libel, unless the publication aided by pertinent innuendoes fails to constitute libel as it is defined by the statutes of this State. The allegations of innuendo made in aid of the charge of libel summarized are that the "young woman" referred to in the publication meant and was by defendant intended to mean plaintiff; that the words, "The proprietor of the place was not present, but a young woman behind the bar, in answer to the question as to whether or not students were patrons of the place, stated in an excited way that 'she was going to tell Dr. Carter to put bells around the necks of the students, so they could tell who they were. When we ask young men if they are students, they get mad and tell us that it is none of our business. We can't tell, and we are here to do business.' Asked if there had been any sales to students since the place reopened, she

admitted that there had been and that it took place on Saturday morning. 'Two young men came in and asked for some wine. They told me they were not students, and I sold them what they wanted; then after they had drank it they said they were students and laughed,' " defendant meant and intended to mean and published that the plaintiff was behind the bar, meaning the barroom; and that defendant thereby meant and intended to mean and publish that plaintiff was offering for sale and selling and had sold intoxicating liquor in a barroom to students of an institution of learning, in violation of law and that she was a common barmaid.

That, by the use of the language in said publication, "the place named above has been complained of, and it is understood from neighbors that the students inclined to patronize such places are attracted there for some reason," defendant meant, as an addition to other matters quoted, that plaintiff was used by her father as a barmaid in said barroom for the purpose of attracting medical students and other persons there for patronage; and meant, and was intended to mean by the defendant, that plaintiff was a person of loose morals and a person addicted to lascivious conduct and that she, this plaintiff, was an attraction placed in said barroom by her father to entice and attract said medical students and other persons into said barroom, and that said published words meant and were by defendant intended to mean that plaintiff was an unchaste woman.

The insinuations alleged to be deducible from the publication that the plaintiff was a barmaid engaged in the illegal sale of intoxicating liquors and a person of loose virtue were alleged to have caused damages general and special in the following language: "The published statement of defendant that plaintiff was a barmaid serving and selling intoxicating liquors in a common barroom, caused her to lose the respect and esteem of her neighbors and acquaintances in the community in which she lives; and that said published statement of defendant that she, said plaintiff, was aiding, abetting and conniving at violations of the law regulating the sale of intoxicating liquors in the State of Texas impeached her integrity and caused an ill opinion of her in the community in which she lives, and caused her to sustain damages by reason of the injury to her reputation as a woman of integrity, good conduct and good demeanor in the community in which she lives, and caused her to suffer much mental anguish and humiliation." * * * "And caused her to sustain special injury and damages to her reputation as a woman of good morals, good conduct, good propriety and virtue, and caused her to suffer much mental pain, agony, distress of mind and humiliation, and degraded her in the community in which she lives."

To the sufficiency of plaintiff's petition the defendant interposed general and special exceptions, which raised the question whether or not the publication, aided by the innuendoes as set out herein, constituted libel. These exceptions were overruled by the trial court and the cause submitted to a jury, which returned a verdict for plaintiff for $5,000.00, general damages. Upon an appeal of the case by the defendant below to the Court of Civil Appeals at Galveston, that court on January 14, 1911, reversed the judgment entered

in favor of plaintiff in the lower court and rendered judgment for the defendant below. See opinion in cause of Galveston Tribune v. Pietrina Guisti et al., 134 S. W., 239. The cause is in this court upon writ of error prosecuted by the plaintiff below.

The first error assigned as ground for the writ of error presents the question whether or not the publication declared on, in connection with the innuendoes, constitutes a libel. It was held by the Court of Civil Appeals that it did not, and that the general demurrer to plaintiff's petition should have been sustained, and that it was not possible by any proper innuendoes to make the publication libelous. In this we are clearly of the opinion there was error.

Article 5595, Revised Civil Statutes, 1911, defines libel as follows: "A libel is a defamation, expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

By the express terms of the article of the statute above quoted, insofar as it relates to the case at bar, any written or printed publication tending to injure the reputation of any person alive and thereby exposing him to public hatred, contempt or ridicule, or tending to impeach the honesty, integrity, virtue or reputation of such person is a libel. It then becomes pertinent to inquire whether there is anything in the language used in the publication complained of that tends to injure the reputation of plaintiff and which would expose her to public hatred, contempt or ridicule, or which tends to impeach her honesty, integrity, virtue or reputation. It is immaterial that the publication complained of is not libelous *per se*, it is libelous and actionable, nevertheless, if by such innuendoes as may not extend but simply explain the effect and meaning of the language used and the identity of the person libeled, the publication is of such character as tends to injure the reputation of plaintiff and expose her to public hatred, contempt or ridicule, or tends to impeach her honesty, integrity, virtue or reputation.

We are unable to agree to the proposition as stated by the Honorable Court of Civil Appeals in this case that "this statute does not enlarge the common law definition of libel as previously understood and declared by our courts, and manifestly its purpose was only to fix certainly and clearly by statute a definition which might not be changed or modified by the courts to meet the supposed justice of a particular case." We think it clear that in the enactment of the law the purpose was not only to make definite what constitutes actionable libel in this State, but to materially modify the doctrine of the common law upon that subject. By the terms of the present law a libelous publication, contrary to the common law rule, becomes actionable without the proof of malice, whether it is or not libelous *per se*. Under the present law it is not necessary to the right to maintain an action for a publication not libelous *per se*, to allege or prove special

damages. Walker v. San Antonio Light Pub. Co., 30 Texas Civ. App., 165, 70 S. W., 557. In this particular the common law rule has been modified. Again, at common law, where the libel was not actionable *per se,* damage for mental anguish was recoverable, if at all, only when proof had been made of other injury or damage, but the contrary is the rule under the present law. So that we are constrained to hold with Judge Key as in the case of Walker v. San Antonio Light Publishing Co., above cited, that the manifest purpose of the Legislature in enacting this law was to cover the entire subject of libel as applied to civil actions, without regard to the rules of the common law and holdings of the courts on the subject, and to materially enlarge the rights of those who may be the subject of libelous publications.

Prior to the act of the 27th Legislature we had no statutory law upon the subject of civil actions for libel, except those relating to the questions of limitation and jurisdiction, and such penal statutes as created offenses growing out of libel and slander. The common law upon the subject was the sole guide, except in so far as the common law doctrine was held to have been changed or modified by the penalization by legislative act of certain written publications and oral utterances. Before the holding of Judge Brown in the case of Hatcher v. Range, *et ux,* 98 Texas, 85, 81 S. W., 289, the law of this State prescribed by the common law held that the imputation of unchastity in a woman was not actionable *per se,* and could only be sustained upon the allegation and proof of special damages. In the Hatcher case Judge Brown, with his profound sense of justice, propriety and the correct legal effect to be given the penal statute making it a penal offense to "falsely and maliciously or falsely and wantonly" impute to a female want of chastity, held such imputation of unchastity gave a civil action for damages without showing special damages arising therefrom This decision was not the result of the exigencies of the case, but in response to a proper interpretation of the law. But, irrespective of the penal code, the present statutory law makes any printed or written statement tending to impeach the virtue of any person in this State actionable as a libel, without regard to the allegation or proof of special damages.

The claim that the publication in effect charged plaintiff with being a barmaid engaged in conducting a barroom and illegally selling intoxicating liquors to students of the Medical University is in our judgment fully sustained by the context of the article. The sale of intoxicating liquors to students being prohibited by law and subjecting the person guilty of violating such provision of the law to the payment of heavy penalties and the forfeiture of the license to longer engage in such business lawfully conducted, is a defamatory publication tending to bring the person thus libeled into public contempt and impeaches his integrity and reputation as a law-abiding and worthy citizen. It is immaterial that the article did not charge plaintiff with the commission of crime in the sense of violating the penal laws of this State, for it is no longer essential to constitute a publication libelous that it should charge an offense denounced by the penal code of the State or by the common law, but it is sufficient

if the written or printed defamation tends to subject plaintiff to public contempt or impeaches her integrity or reputation.

In testing the general demurrer, it is assumed the charge made against plaintiff was untrue and that she was a person of good reputation. Just how a young woman of good reputation and social standing charged with being a bar tender or bar maid and conducting such business in a manner to subject the proprietor of the saloon to the liability of paying heavy penalties and forfeiting his license, could withstand this imputation and retain the esteem and respect of her neighbors and acquaintances and possess her good reputation is not to us conceivable. Under the circumstances set forth in the publication and the facts alleged, this portion of the article constituted a libel upon plaintiff and gave her a cause of action independent of any other charge.

After stating that the proprietor was absent and finding a young woman behind the bar engaged in conducting the liquor business and selling to students of the Medical University in violation of law, the article proceeds to say, "the place named above has been complained of, and it is understood from neighbors that the students inclined to patronize such places are attracted there for some reason." By innuendo, it is claimed, this portion of the publication called into question the womanly integrity of plaintiff and is an impeachment of her virtue. The Court of Civil Appeals hold that "such an inference from this language is wholly unreasonable," but we are inclined to the opposite view. Considering all the references to plaintiff and the attitude in which she is placed by the article, as a young woman behind the bar announcing that "they were there to do business," it is difficult to put any other construction upon the meaning of the words complained of than that charged in the innuendo. The natural inference from the language of the article above set out is that the neighbors of plaintiff have complained of the place, and not because intoxicating liquors are being sold to students, but because for some reason students inclined to patronize saloons are attracted to this particular place. The first thought that would naturally suggest itself to the ordinary reader would be, why are students who are inclined to patronize saloons attracted to the corner place of Guisti? Why should the neighbors to this corner grocery be interested in the fact that students were sold intoxicating liquors there, further than to entertain a contempt for the person engaged in so violating the law? But it would be perfectly natural for neighbors to complain if students were attracted to the place by reason of a young woman of loose virtue. In this they would have the incentive of preserving the decency of their locality and the example set for their boys and girls. But whatever view may be taken of the language used, if its meaning is ambiguous and of doubtful import, as is conceded by the Court of Civil Appeals, the proper practice was to submit the question to the jury, which was done. Under such circumstances it was not proper for the court to dispose of the matter by determining what was the reasonable and natural meaning of the statement. That is the court's duty in those cases where the publications admit of no ambiguity, but where such ambiguity exists in the language complained of, it is the

court's duty to define libel and leave to the jury the question as to whether the language is libelous. Cotulla v. Kerr, 74 Texas, 89 (11 S. W., 1058).

The learned Chief Justice of the Court of Civil Appeals, in discussing this feature of the case, says: "The question is not what construction the witnesses in the case may put upon the statement, but what is its reasonable and natural meaning in view of the facts and circumstances under which it was made as alleged in the petition?" We think the contrary is the rule in this State. In rendering the opinion in the case of Belo & Co. v. Smith, 91 Texas, 225, Chief Justice Gaines makes clear our position in the following statement: "The question is, what effect would the publication have upon the mind of the ordinary reader? What construction would he have put upon it? For in defamatory language, it is not so much the idea which the speaker or writer intends to convey, as what he does in fact convey. It is the effect upon the character of the person alleged to be defamed by the utterances which the law considers, and therefore the utterer uses the language at his peril."

In regard to the finding by the jury of general damages only, we do not think this finding indicated that the jury found against plaintiff upon the issue that the publication charged her with a want of chastity. The jury were told by the court's charge that in case they believe the publication charged plaintiff with unchastity they might find special damages, and that if they did not find special damages resulting to plaintiff by reason of the imputation of unchastity they should find for the defendant, unless they found for plaintiff on the other issue, but a finding by the jury of general damages only does not necessarily imply that they found against the charge of unchastity. They might have found the article impeached plaintiff's virtue, but that no special damages resulted therefrom. The charge of the court to the effect that plaintiff could not recover where she had been libeled by the imputation of unchastity unless she sustained special damages was clearly error. This has not been the law of this State since the Hatcher case above cited. There is nothing in the present law to warrant such a holding.

We have examined the record and find that there is nothing in the manner of the presentation of the case to the jury of which the defendant can justly complain, and that the evidence is sufficient to sustain the finding of the jury. The judgment of the Court of Civil Appeals will therefore be reversed and that of the lower court affirmed, and it is accordingly so ordered.

Opinion rendered November 13, 1912.

### ON MOTION FOR REHEARING.

The court has given the motion for rehearing and argument of learned counsel in this case a careful reading and consideration, but conclude that no sufficient reason has been shown why the disposition made of the case at a former day of this court should not be adhered to. It is urged with great insistence that this court, in affirming the judgment of the trial court, acted without jurisdiction, in as much

as there must have been a finding of fact by this court in reaching its conclusion. It has been repeatedly held by the Supreme Court that it has no power to determine facts, but while it has been thus repeatedly held it has been as often held that the question as to whether there is sufficient evidence or whether there is any evidence to establish a cause of action is a question of law of which this court has cognizance. When the Court of Civil Appeals reverses and renders a cause on account of the insufficiency of the evidence in law to justify a recovery, the Supreme Court, reversing such ruling because in its opinion the evidence is sufficient to support the recovery below, will remand the cause for a new trial. Pollock v. Houston & T. C. Ry. Co., 103 Texas, 70. This must necessarily be the rule, for in such cases there is undetermined an issue of fact. But when, as in the case at bar, the Court of Civil Appeals in effect and in fact finds all the allegations and evidence of plaintiff as true and undisputed, and upon such finding reverses and renders the judgment, the question is one purely of law, and when this court is of the opinion that the evidence thus found by the Court of Civil Appeals to be undisputed, is sufficient to sustain the judgment of the trial court, it is our duty to reverse and render the judgment. We do not find the facts or any fact in such case, but simply determine the law upon the undisputed facts as found by the Court of Civil Appeals.

The motion for rehearing is therefore overruled.

*Reversed and judgment of District Court affirmed.*

Opinion rendered December 23, 1912.