## CULINARY WORKERS' UNION NO. 331 et al. v. FULLER et al.

### No. 3114.

Court of Civil Appeals of Texas.
Beaumont.

April 29, 1937.

V. J. Wistner, of Port Arthur, for appellants.

Lipscomb & Lipscomb, of Beaumont, for appellees.

WALKER, Chief Justice.

On the 1st day of September, 1936, on petition and prayer of appellees, W. R., J. P., and L. W. Fuller, the Fifty-Eighth district court of Jefferson county entered a final judgment against appellants, Culinary Workers' Union Local No. 331, J. William Le Blanc, John Etie, E. Rabey, and Pearl Louis, their agents, servants, and representatives, perpetually enjoining them from picketing appellees' restaurant and place of business in the city of Port Arthur. All evidence received on the trial had support in the pleadings.

Appellants' only proposition against this judgment is that it "clearly amounts to a prohibition against peaceful picketing and is contrary to the statutes of the state of Texas and to the declared public policy of the State"; in support of their proposition they cite the following articles: Revised Statutes of the state of Texas;

Art. 5152: "It shall be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments."

Art. 5153: "It shall be lawful for any member or members of such trades union or other organization or association, or any other person, to induce or attempt to induce by peaceable and lawful means, any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged. Such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof." and Thomas v. International Seamen's Union (Tex.Civ.App.) 101 S.W.(2d) 328, 332.

On the facts of this case we overrule appellants' proposition. Appellees have in their employment about 25 men and women. They have discharged no employee nor retained one objectionable to the other employees. The employees are satisfied with appellees' government, with their wages, which for waiters and waitresses exceeded the union scale, their working conditions, and the conditions of their employment. There was no contractual relation of any nature whatever between appellees and appellants, nor, on the record, between appellants and appellees' employees; appellees conceded to their employees the right to join the union. On the 19th of August, 1936, appellants, through their agents, asked appellees to sign a contract with them to "unionize" their restaurant, and to employ only union labor. Appellees refused to sign the contract, and the next morning appellants established a picket line in front of appellees' place of business. The pickets carried placards on their backs reading: "We appeal to employees of Non-Union Cafes to strike for union wages"; "Help us to get our wages; don't patronize this cafe. Help us to increase our wages; don't patronize this

cafe"; "We appeal to all employees of Non-Union cafes to strike for union wages." Appellee R. W. Fuller testified that the pickets came "right up in front of the door trying to keep people out; almost blocked the door continually; * * * Well, they talked to people, 'Don't go in there; it is unfair,' and write down names on pieces of paper." When picketing first began cooks and waiters were used as pickets; later a different type of picket.

"* * * Q. What type of men is now picketing your place? A. Sea men, they seem to be.

"Q. Well, are they men known to have any property at all? A. I think not, no sir; wouldn't think so.

"Q. Are they men who work? A. I haven't seen them work.

"Q. Do you know any particular persons who are picketing your place of business? A. Yes, sir.

"Q. What are their names? A. Well, they have one there now named Koch."

As to the effect of the picketing on their business this witness testified further as follows:

"Q. Have you lost any patronage by reason of the picketing Mr. Fuller? A. Yes, sir.

"Q. What is the reason for that? A. Picketing being going on; people afraid to come in on account of the pickets being there.

"Q. There are a great many labor unions in Port Arthur, are there? A. Yes, sir.

"Q. And a good many people who belong to those unions? A. I guess so.

"Q. With respect to the Barbers' Union, would they fine members of that union who go into or patronize your place? A. I think so.

"Q. You have been told that? A. I really don't know but I have been told that. * * *

"Q. Did it interfere with your business in your cafe? A. Certainly.

"Q. To what extent? A. About one fourth or one third.

"Q. Have your receipts dropped off any? A. About one third or one fourth."

Mr. M. F. Hill, president of the Port Arthur Trades & Labor Council, gave the following testimony:

"Q. What was the purpose of starting these pickets on this Fuller's Cafe? A. Ten cafes had signed a union contract, thereby increasing wages. In certain instances wages were getting as low as $5.00 and some instances they were getting as low as $4.50 at one particular restaurant. Three years ago the union was formed—

"Q. I asked you the question what was the purpose of picketing Mr. Fuller's restaurant? A. You want a direct answer?

"Q. Yes. * * * A. The idea in picketing was to obtain a signed contract, thereby getting the word of the workers themselves as to the wages they were getting.

"Q. In other words to force them to sign a contract? A. I would say yes.

"Q. The purpose of the picketing was to either force them to sign it or injure their business for failure to sign it. A. I wouldn't say it had any intention of injuring Mr. Fuller."

The facts of this case fall squarely within the holding of the Fort Worth Court of Civil Appeals in Webb v. Cooks', Waiters' and Waitresses' Union, No. 748, 205 S.W. 465, 469 (writ of error refused by the Supreme Court), where, on identical facts, the court said:

"It is apparent that article 5245 [new number 5153, copied above] is without application here. The right and privileges there granted apparently relate to cases of the ordinary strike so familiar to the public, where the controversy is between an employer and his employees. But there is no controversy of the kind here. So far as the record shows, appellant and his employees are in entire harmony. Appellant has discharged no employee nor retained one objectionable to the other employees. Nor does it appear that any one or more of appellant's employees are dissatisfied with appellant's government, with the wages paid, or hours of service required. So that the question is narrowed to the simple one of whether in enacting article 5245 it was the legislative purpose to authorize any character of coercion or intimidation to compel a person in business necessitating the employment of servants to employ such persons only as shall be designated by another person or association of persons, and to permit such other person or association to dictate the rate of wages to be paid, the

number of hours to serve, etc. We do not think so. * * *

"At all events the privileges extended by article 5245, so far as they may be construed as limitations upon freedom in business pursuits, ought not, as it seems to us, to be extended to circumstances such as we now have before us, and thus run counter to our anti-trust statute expressly forbidding combinations to 'create or carry out restrictions in the free pursuit of any business.' "

The court held that the restaurant keeper was entitled to an injunction prohibiting picketing. Cooks', Waiters' and Waitresses' Local Union v. Papageorge, 230 S.W. 1086, 1088, opinion by Judge Fly of the San Antonio Court of Civil Appeals, is another case with facts on all fours with the facts of this case. Holding that the restaurant keeper was entitled to an injunction prohibiting picketing, Judge Fly cited the Webb Case, supra, saying: "As shown in the cited opinion, article 5245, which declares that it shall not be unlawful for members of trades unions and other organizations to induce by peaceable means any person to accept or relinquish any certain employment, does not apply to cases like the one now under consideration. That statute evidently refers to the ordinary strike where employees leave the employment of another, with whom they are at disagreement. No law can destroy or impair the right of men to quit their employment, and any impairment of that right is denied by the statute. But, as in the Webb Case, a different state of facts appears in this case."

Clearly, under these authorities articles 5152 and 5153 did not authorize appellants to picket appellees' place of business.

Thomas v. International Seamen's Union, supra, does not support appellants' contention. In that case we said: "Paragraph (d) of the decree, whereby appellants are enjoined from posting picket lines 'in any other name,' is an undue limitation upon their rights. As we understand appellees' petition, appellees prayed only that appellants be enjoined from posting picket lines or picket posts in the name of International Seamen's Union of America and its affiliated associations. But even if the relief granted had been prayed for, the lower court should not have prevented peaceful picketing, a right specifically granted appellants by virtue of article 5153, Revised Statutes 1925, reading: 'It shall be lawful for any member or members of such trades union or other organization or association, or any other person, to induce or attempt to induce by peaceable and lawful means, any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged. Such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof.' This article does not use the term 'picketing,' but the right granted falls within any possible definition of peaceful picketing. Under this statute appellants had the right to post picket lines or picket posts provided, in doing so, they did not use appellees' name."

But, in that case, appellants were on strike, and in seeking to enforce their demand established and maintained picket lines. We were dealing with a strike where the employees had left the employment of another with whom they were in disagreement, and where a sharp issue was drawn between the demands of the employees and the concessions their employers were willing to make.

Under the opinion of this court in the Thomas Case and the other authorities cited and reviewed, and also under the principles of the general jurisprudence of this state, there is no law destroying or impairing the right of men to quit their employment, to strike, and to conduct peaceful picketing in support of their strike. But in the case at bar there was no strike nor threat of a strike; there was no controversy or dissatisfaction between appellees and their employees. For these reasons articles 5152 and 5153 have no relation to the facts of this case and do not support appellants' right to picket appellees' place of business.

The point discussed is the only proposition urged by appellants against the judgment of the lower court. It follows that the judgment appealed from should be in all things affirmed, and it is accordingly so ordered.

Affirmed.