**CARTER et al. v. BRADSHAW et al.**

**No. 5198.**

Court of Civil Appeals of Texas. Amarillo.
Jan. 22, 1940.

Rehearing Denied Feb. 19, 1940.

Willis & Via, of Pampa, and G. C. Harney, of Borger, for appellants.

Joseph H. Aynesworth, of Borger, for appellees.

FOLLEY, Justice.

This is an appeal from a temporary injunction granted in a suit filed by the appellees, R. M. Bradshaw and others, who are engaged in the automobile business at Borger, Hutchinson County, Texas, under the firm name of Bradshaw Motor Company, and dealing in the sale of Chevrolet automobiles, trucks, parts and repairs. The appellants are Carpenters' Union No. 1201 of Borger, composed of some eighty members, L. G. Carter, who is its president, and other officers not necessary to mention, and W. A. Jones, who is a member of such union and alleged to be the agent thereof.

The appellees alleged that they are engaged in the automobile business in Borger, Texas, buying and selling automobiles, trucks, repairs and parts; that on or about the 25th day of August, 1939 one Jim Roban began the erection of a building in Borger under a contract with them in which building they expected to carry on their automobile business upon its completion; that under their contract with Roban they had no control of the selection of employees in the construction of such building; that the union engaged W. A. Jones to walk immediately adjacent to the building being constructed and that he carried placards on his breast and back containing the following: "Bradshaw Motor Company is Unfair to Organized Labor. Carpenters' Union No. 1201", or words of similar import; that such building was fast nearing completion and that when completed the appellees would take charge of the same for their retail business; that the purpose of the conduct of the appellants was to force the appellees to discharge the said Jim Roban and cause the latter to discharge his employees engaged in the erection of the building and to compel the appellees to breach their contract with Roban; that the appellants by their conduct intended to influence, direct and compel the appellees and all others to do their will and bidding; that the purpose of having W. A. Jones parade in front of such building was to warn all people to keep away from appellees' place of business and to prevent any and all persons from assembling in appellees' place of business; that appellants were seeking to injure the appellees in the exercise of their personal rights and liberty and that the conduct of the appellants will interfere with the patronage of the appellees and cause them to lose trade unless the appellants were restrained in their unlawful conduct; that the appellants will continue through their conspiracy and by their joint efforts to harass and humiliate the appellees and restrain them in their business and that as a result thereof the appellees would from day to day and from time to time continue to suffer annoyance, mental and physical pain and financial loss unless the appellants were restrained from such conduct; that the appellants were insolvent, unable to respond in damages, and that appellees had no adequate remedy in law; and the appellees prayed for a hearing and that the appellants be restrained of all conduct of the nature complained of and especially to be enjoined from parading near appellees' building and calling attention of any person seeking to visit said place of business.

The appellants answered by general demurrer and general denial, and specially alleged that the appellees had agreed with Roban that in the erection of the building no union labor would be used; that no union labor was being used in the work; that they duly protested to appellees against such discrimination; that thereupon a dispute arose between the appellants and the appellees as to whether any union carpenter could or should be employed upon the work; that the appellees failed and refused to arbitrate the dispute, whereupon the appellants procured W. A. Jones to picket the premises, instructing said Jones to do nothing more than walk in front of the building bearing the placard in question; that they requested Jones to act peacefully and not to interfere with any person or persons about the premises; that Jones did not do anything which could be construed as the use of threats, force or violence; that the said Jones and the other appellants had not in any way threatened to boycott the appellees' business or prevent any persons from there assembling; and that their sole attempt had been to peacefully persuade the

appellees that the latter should be fair to union labor.

A hearing was had before the court on November 8, 1939, the same day the pleadings of the parties were filed, and thereupon the court issued the temporary injunction restraining the appellants from picketing the appellees' place of business, patrolling the same with placards of any sort near enough to attract the attention of anyone passing, entering or leaving the building; and enjoining them from aiding, encouraging or procuring anyone else to do any of the acts complained of by the appellees. It was further ordered that such temporary injunction should remain in force until January 29, *1939* (presumably a clerical error and meant for 1940) at which time a further hearing should be had to determine whether the injunction should be continued or dissolved (Italics ours).

The appellants assert that under the pleadings and facts of this case the trial court was without authority to grant the temporary injunction herein and therefore abused his discretion in doing so. The appellees contend to the contrary.

The testimony shows that R. M. Bradshaw, Ralph E. Randel and M. G. Weeth, appellees herein, are engaged in the automobile business in Borger as alleged by them. On August 21, 1939 they entered into a contract with James J. Roban, a contractor, to erect for them a new building in the town of Borger into which they planned to move their business upon its completion. The contract called for the erection of the building according to the plans and specifications prepared by an architect named therein. The contractor was to furnish all the materials and perform all the work for a consideration of $10,500.

Before the written contract was entered into but while the negotiations were in progress in regard thereto, D. M. Prater, manager of the local carpenters' union and two other representatives of such order, called to see the appellee Bradshaw and inquired of him if he intended to give the contract to one L. P. James, a union contractor. Bradshaw replied that James had performed some work for him in the past which was unsatisfactory and that he intended to give the contract to Roban. The representatives then asked Bradshaw if he knew Roban did not employ union labor. Bradshaw replied that he did not know such to be true but he did know that Roban builds a "good honest house" and that Roban was the man he wanted. Bradshaw also informed these representatives that he did not have anything to do with the employment of labor on the job. These representatives also called to see Roban about the same time and importuned him to use union labor in the construction of the building. Roban refused their request.

Some two days after the written contract was entered into between the appellees and Roban, the construction of the building began under the supervision of Roban, the contractor. The employees on the job were hired exclusively by Roban, the appellees having nothing to do with the hiring and having no supervision over their work. Roban used only non-union labor in the construction.

The picketing of appellants began about the time the construction commenced and continued at intervals until the time of the hearing on November 8, 1939. At first the picket carried placards reading: "This job is unfair to organized labor". About the time this picketing began, according to Bradshaw's testimony, Prater returned to see Bradshaw and asked the latter to cancel his contract with Roban and employ union labor on the work. Bradshaw replied that he had already made a deal with Roban and there was no use in further discussion of the matter.

On or about October 28, 1939, the appellees began moving their equipment into the new building although the building was not then completed nor was the same entirely finished at the time of the hearing on November 8, 1939. After the appellees moved their equipment into the new building the wording on the placards carried by the picket of appellants was changed by the appellants to read as follows: "Bradshaw Motor Company is Unfair to Organized Labor. Carpenters Union No. 1201". This picketing continued for several hours each day up to the hearing, and the appellants admitted it was being done by their organization. They further admitted that they had planned to have three or four pickets in front of the building on the day the appellees were to have their formal "opening", which, as shown by the testimony, would have taken place some two or three days after the hearing on November 8th.

The purpose of the picketing as testified to by Prater and L. G. Carter, president of the local union, was to persuade the appellees to recognize the rights of union labor, to show their disapproval of appel-

lees' conduct and to advertise that Bradshaw Motor Company was unfair to organized labor. The appellants further asserted by their evidence that no injury to the appellees was intended. Their evidence further revealed that the appellants possessed no property subject to execution.

The testimony as a whole shows that the picketing of the appellants was entirely peaceful and orderly, there being no violence or trespass engaged in and no unlawful acts committed unless it could be said that the picketing under the above circumstances amounts to such. Nor was any specific injury shown to have been suffered by appellees except possibly the humiliation attendant upon such conduct upon the part of the appellants. In other words, no pecuniary damage was shown by reason of any loss of business or patronage. The testimony does not show that any dispute existed between the appellees and the laborers engaged in the work nor does it show any dispute or controversy between appellees and Roban or between Roban and his employees.

Under the above circumstances it is our opinion that the appellees were not unfair to organized labor nor to the labor union involved. The testimony shows that appellees had no control over the hiring of workmen on the job and had no immediate supervision over their labors. The appellees had a constitutional right to contract with Roban and this was true even though they knew he would not use union labor in the construction work. Therefore, the language of the placards charging the appellees as being unfair to organized labor was a falsity on its face, and, we think, constituted civil libel as defined by art. 5430, R.C.S. of 1925. Such being true the provisions of art. 5153, R.C.S. of 1925, did not, in our opinion, authorize the picketing done by the appellants. The latter article provides that the members of a trades union may "induce or attempt to induce by peaceable and *lawful* means, any person to accept any particular employment or to enter or refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged". (Italics ours). The means herein used may have been peaceful as far as the criminal laws are concerned but they were not lawful under the civil law because the words of the placards constituted a "defamation expressed in * * * writing * * * tending to

injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity * * * or reputation" of the appellees. Art. 5430, supra. There being no express malice shown in this case it is doubtful if the law of criminal libel as set out in arts. 1269 and 1275 of the Penal Code was breached and therefore the appellees had no remedy adequate for this grievance as might be afforded by a criminal prosecution of the appellants. Under the law of civil libel as announced by the statute the element of malice is not as important as in the criminal law. Guisti et al. v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874. Therefore, their only remedy was by virtue of the civil statute, which in this case was not, in itself, an adequate remedy because of the fact that a civil suit for damages would not have amounted to the plain, complete, practical and efficient remedy to which the appellees were entitled. Nagy v. Bennett et al., Tex.Civ.App., 24 S.W.2d 778; Cook v. Panhandle Refining Co., Tex.Civ.App., 267 S.W. 1070. It is apparent that the appellants were insolvent and that a suit for damages would have availed the appellees nothing. Moreover, the acts complained of herein are a violation of the personal rights of the appellees regardless of lack of any visible or measurable damages in dollars and cents. In 14 R.C.L. 370, para. 72, it is stated: "Although the jurisdiction of equity, to grant an injunction, is ordinarily regarded as confined to cases where rights of property are involved and as not extending to an exclusively personal right, yet, in many cases, in which relief has been granted it would seem that, though the exercise of the power is nominally based on an alleged property right, the observance of the rule that equity will be limited to rights of property is, in fact, only a nominal one, the right, to protect which relief is granted, being in reality merely personal."

In Hawks v. Yancy, Tex.Civ.App., 265 S.W. 233, 237, the court says:

"The rule that equity will not afford relief by injunction except where property rights are involved is known chiefly by its breach rather than by its observance; in fact, it may be regarded as a fiction, because courts with greatest uniformity have based their jurisdiction to protect purely personal rights nominally on an alleged property right, when, in fact, no property rights were invaded. This is, in our opin-

ion, as it should be, because the personal rights of citizens are infinitely more sacred and by every test are of more value than things that are measured by dollars and cents.

"Such a rule, as said in the note to Chappell v. Stewart, 37 L.R.A. 783, makes 'the system of equity suitable only to a semi-savage society which has much respect for property but little for human life. Our equity jurisprudence does not quite deserve so severe a reproach. It does, indeed, do much for the protection of personal rights, although it has not been willing to acknowledge the fact but has persisted in declaring the contrary.'"

In 32 C.J. 183, para. 269, the following language is used: "An injunction will not issue to restrain the picketing of one's place of business and the use of peaceable persuasion to induce his customers and the general public to withhold patronage from him. But where picketing is accompanied by force, violence, intimidation, or the circulation of false statements, it will be enjoined."

■ Section 1 of art. 4642, R.C.S. of 1925, provides for injunctive relief where "the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him". We think it is evident that the acts of the appellants in unlawfully and wrongfully impeaching and impugning the honesty and reputation of the appellees, necessarily exposing them to public contempt and ridicule, were such acts as are prejudicial to the appellees and as might be enjoined by a court of equity, especially in the absence of a complete, practical and efficient remedy at law. Ex Parte Warfield, 40 Tex.Cr.R. 413, 50 S.W. 933, 76 Am.St.Rep. 724; Gibraltar Savings & Building Ass'n et al. v. Isbell et al., Tex. Civ.App., 101 S.W.2d 1029; Walker et al. v. Fort Worth Insurance Underwriters' Ass'n et al., Tex.Civ.App., 79 S.W.2d 661, writ dismissed. It is therefore our opinion that the trial court did not abuse his discretion in granting the temporary injunction herein. Culinary Workers' Union No. 331 et al. v. Fuller et al., Tex.Civ. App., 105 S.W.2d 295; Webb v. Cooks', Waiters' and Waitresses' Union, No. 748 et al., Tex.Civ.App., 205 S.W. 465; Cooks', Waiters' and Waitresses' Local Union et al. v. Papageorge et al., Tex.Civ.App., 230 S.W. 1086; Ellis v. Journeymen Barbers' International Union of America, Local

Union No. 52, et al., 194 Iowa 1179, 191 N. W. 111, 32 A.L.R. 756, and authorities cited.

The judgment is affirmed.

On Motion for Rehearing.

■ On February 2, 1940 the appellants filed a motion for rehearing herein. We have concluded that this cause has become moot since the date of our original opinion on January 22, 1940. As will be seen from our opinion above the injunction order expired by its own terms on January 29, 1940, which was just one week after we affirmed the cause. The effect of our affirmance of the judgment below was to keep in force the trial court's order until it expired on January 29, 1940. Such order, under the record presented, having expired on said date nothing remains for this court to adjudicate. Ex parte Zuccaro, 106 Tex. 197, 163 S.W. 579, Ann.Cas. 1917B, 121; Swift et al. v. Callaghan Land & Pastoral Co., Tex.Civ.App., 120 S.W.2d 459; Yellow Mfg. Acceptance Corporation v. Scott Motor Co., Tex.Civ.App., 113 S.W.2d 293; Riggins v. Thompson et al., 96 Tex. 154, 71 S.W. 14; City of Lubbock v. Steagall et al., Tex.Civ.App., 45 S.W.2d 996.

The motion for rehearing is therefore overruled.