**Bob H. MUSSER, Individually and D/B/A Musser & Associates, Appellant,**

**v.**

**Andrew L. SMITH, Appellee.**

**No. C14–84–236CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 28, 1985.

Rehearing Denied April 25, 1985.

57

Michael C. Neel, Houston, for appellant.

Thomas P. Startwelle, Fulbright & Jaworski, Houston, for appellee.

Before JUNELL and SEARS, JJ., and T. GILBERT SHARPE, Retired Justice.

OPINION

JUNELL, Justice.

This appeal concerns a defamation action brought by Bob Musser, appellant, against Andrew Smith, appellee. A jury answering special issues found that a certain written statement made by Smith in a letter was libelous and made with malice and was a proximate cause of damage to Musser. The jury awarded actual or compensatory damages of $15,000 and exemplary damages of $35,000. Upon appellee's motion for a judgment non obstante veredicto the trial court disregarded the jury's finding as to malice and exemplary damages and judgment was entered that Musser recover only $15,000.

Musser appeals on one point of error: that the trial court erred in disregarding the jury's findings of malice and exemplary damages. He argues that the trial court should have granted his motion for judgment on the verdict. Appellee urges in his third of six cross-points that the jury's finding that the statement in question is libelous is supported by no evidence because as a matter of law the statement is not defamatory. We sustain appellee's third cross-point.

Andrew Smith's letter was addressed to Charles S. Yust at Sterling Electronics in Houston, Texas. The letter solicits Sterling Electronics to use polygraph services provided by Smith Protective Services, Inc. Smith knew that Sterling Electronics was employing Bob Musser's company, Musser & Associates, to conduct polygraph tests of its employees and potential employees. He was trying to take the Sterling account away from Musser. The allegedly libelous statement is contained in the following portion of the letter and underlined:

As I mentioned over the telephone, because of the fine job we did in training Bob Musser, we can vouch for his competence. He is a fine polygraph examiner and a very strong competitor. Originally, Sterling Electronics was a Truth Verification client. When Mr. Musser left us, he was able, as so many of our ex-employees have in the past, to relieve us of certain of our polygraph accounts. The two major accounts that he took were Sterling Electronics and Finger Furniture Company.

■ Texas law defines libel as a defamation tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach his honesty, integrity, or virtue, or reputation. Tex. Rev.Civ.Stat.Ann. art. 5430 (Vernon 1958). In determining whether certain words are defamatory the trial court, and an appellate court upon review, must decide whether the words used are reasonably capable of a defamatory meaning. *Taylor v. Houston Chronicle Publishing Co.*, 473 S.W.2d 550, 554 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). The statement should be construed as a whole in light of the surrounding circumstances from the aspect of how a person of ordinary intelligence would view the entire statement. *Hajek v. Bill Mowbray Motors, Inc.*, 645 S.W.2d 827, 832 (Tex.App.—Dallas 1982), *rev'd on other grounds*, 647 S.W.2d 253 (Tex.1983) (per curiam). Only when language is of doubtful import or ambiguous should the jury determine the statement's meaning and the effect the publication would have on the mind of the ordinary reader. *Gartman v. Hedgpeth*, 138 Tex. 73, 157 S.W.2d 139, 141 (1941).

In his first amended petition appellant alleges that the statements "would in the mind of the ordinary reader, either specifically or by innuendo, impute the [sic] Plaintiff, the commission of certain unethical acts in business dealings."

■ We fail to see how the statement complained of is defamatory. It calls plaintiff a strong and successful competitor. In our free enterprise system competition is expected, not unethical. The statement does not charge plaintiff with commission of a crime or the violation of any law. It does not accuse him of violating any contract, such as a covenant against competition. In our opinion by no stretch of the imagination does it charge him with any unethical acts in business dealings. It accuses him of absolutely nothing except what he had a right to do, that is, to compete with Smith for business including business from customers of Smith.

■ The recipient of the letter, Mr. Yust, testified that he felt the letter "seemed to cause some doubts as to the integrity of Mr. Musser" and raised questions as to Musser's ethics. He passed the letter on to his superior, Mr. Yuna. Mr. Yuna testified that he was upset with the "implication that Musser would steal business customer lists" and felt that the letter cast a shadow of doubt on Musser's integrity. The reactions of Mr. Yust and Mr. Yuna to the letter were not, we think, typical of what would occur to the ordinary reader. The opinion of the parties has no bearing on whether the complained of words are actually defamatory. *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex.Civ.App.—Dallas 1968, no writ). Neither should the opinion of the actual recipient control.

We hold as a matter of law that the statement is not defamatory and sustain appellee's third cross-point. The appellant is not entitled to actual or exemplary damages; so his point of error is overruled. There is no need to discuss appellee's other

cross-points. We reverse and render judgment that appellant take nothing.

SEARS, Justice, dissenting.

I respectfully dissent. When taken in context with the particular type of business in which Mr. Musser was engaged, the words in the letter are reasonably susceptible to either a defamatory or nondefamatory meaning. That is, the words are ambiguous. The trial court was correct in letting the jury decide the effect of the publication upon the ordinary reader.

Where the meaning of the language is "ambiguous and of doubtful import," the court should submit the question to the jury. *Guisti v. Galveston Tribune*, 105 Tex. 497, 150 S.W. 874 (1912). Further, the *Guisti* court held that under such circumstances it was improper for the court to determine the "reasonable and natural meaning of the statement." *See also Sears, Roebuck and Co. v. Coker*, 428 S.W.2d 710 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.), and the cases cited therein, for a reaffirmance of the Texas rule that the test is "what effect would the publication have on the mind of the ordinary reader."

It is a well-established rule in common law that false words that are harmful to one engaged in his particular office, business or profession are actionable per se. *Stearns v. McManis*, 543 S.W.2d 659, 662 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd). In slander cases this means that the plaintiff need not plead and prove actual damages resulting from the spoken words in order to have a cause of action. It is presumed that words that affect one's business cause damage, while words that are defamatory in general may not cause damage. The per se, per quod distinction is not made when the defamation is in writing, but the concept that the words are to be taken in light of the plaintiff's particular profession is applicable. To charge an employee with dishonesty in his dealings with his employer is slanderous per se. *Butler v. Central Bank & Trust Co.*, 458 S.W.2d 510 (Tex.Civ.App.—Dallas 1970, writ dism'd).

Mr. Yust & Mr. Yuna testified that one reason they became concerned when they read the letter was that a polygraph examiner must be absolutely trustworthy. The examiner is privy to confidential information. He interviews employees and potential employees on a one-to-one basis. An examiner who lacked integrity could "cut a deal or whatever with the employee or the suspect we were trying to examine and that was a concern to us," testified Yust. He further testified that the company did not want to subject good employees to unnecessary or unscrupulous interrogation.

I find no authority for ignoring the jury finding or for substituting this court's majority finding that the statement is not libel as a matter of law. In *Sears, Roebuck and Co. v. Coker,* as in this case, the language complained of could have been understood by the ordinary person (as was found to be understood by both juries) to be libelous. The meaning of the words was a question for the jury. *Id.* at 719. This court cannot substitute its finding for that of the jury even though after reviewing the evidence we might have reached a different conclusion. *Precision Homes, Inc. v. Cooper,* 671 S.W.2d 924 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (cite omitted).

Apparently the only reason the majority reversed the jury finding was because Appellee coated his arsenic with sugar and thereby made it more palatable. The fact that a bee may be hiding in a rose blossom does nothing to lessen its sting.

The record contains evidence to support the jury findings and I would affirm the judgment of the trial court.